**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| *In re: BCBS v. Rite Aid Litigation* | Case No. 20-cv-1731 (ECT/HB) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO COMPEL DEFENDANTS' PRODUCTION OF DOCUMENTS**

## Table of Contents

INTRODUCTION ............................................................................................................. 1

PRELIMINARY STATEMENT ..................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 4

LEGAL STANDARD ...................................................................................................... 5

ARGUMENT ..................................................................................................................... 6

   I.   DOCUMENTS REFLECTING OTHER TPPS' AND PBMS' POSITIONS ON
   RITE AID'S RSP AND U&C REPORTING PRACTICES ARE HIGHLY
   RELEVANT TO THIS CASE. ..................................................................................... 8

     A.   Rite Aid's Communications With TPPs Other Than Plaintiffs and PBMs Other
     Than Those That Processed Plaintiffs' Claims Are Relevant To Multiple Issues In
     This Case. ............................................................................................................... 10

     B.   Any Purported Burden Rite Aid Faces In Producing These Documents Is Far
     Outweighed By The Probative Nature Of This Information And Is Easily Resolved...
     ...................................................................................................................... 14

     C.   Documents and Communications Related to Medicaid Fee-For-Service
     Programs Should Not Be Excluded From Production. ............................................. 16

   II.   RITE AID IMPROPERLY SEEKS TO WITHHOLD DOCUMENTS RELATED
   TO OTHER LITIGATIONS ALSO ALLEGING FRAUD RELATED TO RSP......... 20

     A.   The Requests Seek Documents That Are Relevant and Do Not Seek Improper
     Cloned Discovery. ................................................................................................... 23

     B.   Rite Aid Has Not Demonstrated Any Burden, and The Relevance Of These
     Documents Far Outweigh Any Potential Burden. .................................................... 25

   III.   RITE AID HAS REFUSED TO IDENTIFY ANY GOVERNMENTAL
   INVESTIGATIONS ADDRESSING ITS FRAUDULENT U&C REPORTING
   PRACTICES AND HAS FAILED TO PRODUCE ANY RELATED DOCUMENTS...
   ...................................................................................................................... 26

CONCLUSION ............................................................................................................... 32

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahlgren v. Muller*,
   No. 19-CV-303, 2019 WL 12046350 (D. Minn. June 14, 2019)..............................................11

*Baker v. Cenlar FSB*,
   No. 20-CV-0967 (JRT/HB), 2021 WL 2493767 (D. Minn. June 18, 2021).........................5, 6

*Beseke v. Equifax Info. Servs., LLC*,
   No. 17-CV-4971-DWF-KMM, 2018 WL 6040016 (D. Minn. Oct. 18, 2018).................11, 25

*Costa v. Wright Med. Tech., Inc.*,
   No. 17-CV-12524-ADB, 2019 WL 108884 (D. Mass. Jan. 4, 2019) ...............................24, 25

*Fredin v. Middlecamp*,
   No. 17-CV-3058 (SRN/HB), 2019 WL 11541162 (D. Minn. Oct. 25, 2019) .................10, 23

*Hammes v. Yamaha Motor Corp.*,
   No. CV 03-6456, 2005 WL 8163230 (D. Minn. Nov. 18, 2005) ...........................................11

*In re Hardieplank Fiber Cement Siding Litig.*,
   No. 12-MD-2359, 2014 WL 5654318 (D. Minn. Jan. 28, 2014)...............................24, 25, 26

*Mead Corp. v. Riverwood Nat. Res. Corp.*,
   145 F.R.D. 512 (D. Minn. 1992).........................................................................................31

*Whitman v. State Farm Life Ins. Co.*,
   No. 19-CV-06025-BJR, 2020 WL 5526684 (W.D. Wash. Sept. 15, 2020) ...........................25

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 37, Plaintiffs[1] seek to compel three categories of documents directly relevant to the issues in dispute that Defendants Rite Aid Corporation and Rite Aid Hdqtrs. Corp. ("Rite Aid") have refused to provide: (1) documents related to Rite Aid's Rx Savings Program ("RSP") and usual and customary ("U&C") reporting practices concerning third-party payers ("TPPs") other than Plaintiffs and pharmacy benefit managers ("PBMs") other than the PBMs that adjudicated claims submitted to Plaintiffs; (2) documents produced in other litigations and arbitrations related to Rite Aid's RSP and U&C reporting practices, as well as other litigation or arbitration materials; and (3) documents related to government investigations involving Rite Aid's RSP and U&C reporting practices.

## PRELIMINARY STATEMENT

"A pharmacy's 'U&C price' is the cash price that customers without insurance pay a pharmacy for prescription drugs, *i.e.*, the cash or uninsured price." Compl. ¶ 30 (Dkt. No. 1).[2] Accurate U&C price reporting by pharmacies is critical to the system in which

---

[1] Plaintiffs are Blue Cross and Blue Shield of North Carolina; Blue Cross Blue Shield of North Dakota; Blue Cross and Blue Shield of Alabama; Cambia Health Solutions, Inc.; Asuris Northwest Health; Regence BlueCross BlueShield of Utah; Regence BlueCross BlueShield of Oregon; Regence BlueShield of Washington; Regence BlueShield of Idaho, Inc.; Horizon Healthcare Services, Inc.; Horizon Healthcare of New Jersey, Inc.; BCBSM, Inc. (d/b/a Blue Cross and Blue Shield of Minnesota) and HMO Minnesota (d/b/a Blue Plus).

[2] The current consolidated docket, *Blue Cross and Blue Shield of North Carolina v. Rite Aid Corp.*, No. 20-cv-1731 (ECT/HB) is the result of consolidation of civil actions 20-cv-1731 and 20-cv-2132. The complaints in both actions are substantially similar. Unless otherwise specified, all docket cites in this memorandum (including the Complaint) are to the entries in the 20-cv-1731 docket.

TPPs, like Plaintiffs, reimburse pharmacies for drug prescriptions filled by the pharmacies for the TPPs' members. This case is about Rite Aid's fraudulent scheme to evade its obligation to report true and accurate U&C prices to TPPs, like Plaintiffs, in Rite Aid's submission of claims for reimbursement for prescription drugs sold by Rite Aid to Plaintiffs' members.

By way of brief background, TPPs like Plaintiffs generally determine the amount to be reimbursed for prescription drugs dispensed at retail pharmacies like Rite Aid utilizing a "lesser of" methodology. Compl. ¶ 30. Under the "lesser of" methodology, the TPP will reimburse the retail pharmacy the lesser of: (1) a standardized rate, either negotiated by contract or imposed by statute or regulation, or (2) the retail pharmacy's U&C price for the specific drug. *Id.* Thus, the U&C price acts as a ceiling for the pharmacy's reimbursement. *Id.* Pursuant to well-known and accepted industry standards, the U&C price is supposed to reflect the lowest cash price the pharmacy makes widely and consistently available to the general public. *See*, *e.g.*, *United States ex rel. Garbe v. Kmart Corp.*, 824 F.3d 632, 644-45 (7th Cir. 2016) ("Because Kmart offered the terms of its 'discount programs' to the general public and made them the lowest prices for which its drugs were widely and consistently available, the Kmart 'discount' prices at issue represented the 'usual and customary' charges for the drugs.").

Beginning in 2006, Walmart and other pharmacies implemented discount drug programs and thereafter treated and reported those lower prices as their U&C prices to TPPs. Compl. ¶ 3. Threatened by this price competition, Rite Aid launched its RSP. But also recognizing that treating the discounted drug's price as Rite Aid's "U&C" price

would lead to substantial lost revenue on sales to customers paying with insurance, Rite Aid chose a different tack—it chose not to report its discounted RSP prices as its U&C price to TPPs, including Plaintiffs. *Id.* ¶¶ 4-6. Instead, Rite Aid reported inflated U&C prices tied to "cash" prices that were illusory, or nearly so, frequently far above the RSP price, and sometimes never paid by a single cash-paying customer. *Id.* ¶ 6. This in turn skewed the "lesser of" reimbursement logic toward rates higher than they otherwise would have been if Rite Aid had accurately reported its true U&C prices, *i.e.*, its RSP prices. *Id.* Over time, Rite Aid's fraudulent scheme caused Plaintiffs to overpay hundreds of millions of dollars. *Id.* ¶¶ 7, 8.

Plaintiffs seek discovery from Rite Aid pertaining to its RSP and U&C reporting practices. Specifically, Plaintiffs seek discovery related to how Rite Aid factored its RSP prices, if at all, in calculating U&C prices submitted for reimbursement by Plaintiffs and other TPPs for the purposes of determining reimbursement for prescription services provided by Rite Aid—a key issue in this case. Plaintiffs also seek discovery from Rite Aid pertaining to investigations, litigations, and arbitrations initiated in response to Rite Aid's RSP and U&C price-reporting practices.

Rite Aid refuses to produce documents related to these issues even though they are relevant and Plaintiffs have a good-faith reason to believe that the documents will show that other TPPs, including private and governmental insurers, also discovered Rite Aid's fraud and took action to ensure Rite Aid correct its ways to report only its true and accurate U&C prices—that is, prices that factored in the deeply-discounted RSP prices. These facts, if discovered, could very well contradict, and indeed prove wrong, Rite

3

Aid's main defense in this case, to wit, that its practice of excluding RSP prices from its reported U&C prices was accepted by the industry, including other TPPs.

Accordingly, Plaintiffs now move this Court to enter an Order compelling Rite Aid to produce documents pertaining to other TPPs' treatment of Rite Aid's RSP prices, as well as documents pertaining to any governmental investigation, any litigation, or any arbitration related to Rite Aid's RSP and its failure to report RSP prices as U&C.

## FACTUAL BACKGROUND

Relevant to this motion, Plaintiffs served requests for production and interrogatories on May 21, 2021,[3] to which Rite Aid responded on June 21, 2021.[4] Rite Aid's responses were replete with boilerplate objections, limiting Plaintiffs' visibility into (1) what Rite Aid would produce and (2) why Rite Aid would withhold whatever it intended to withhold. Ruby Decl. Ex. E, 10/27/2021 Ltr. from Mr. Ruby to Mr. Ableson. After several months of discussion, Rite Aid served revised responses to the Interrogatories and Requests for Production on December 1, 2021.[5]

Upon subsequently identifying several material disputes, the parties met and conferred on January 10, 2022, which resulted at an impasse on five issues. Ruby Decl. Ex. H, 1/14/2022 Ltr. from Mr. Ableson to Mr. Ruby ("1/14/2022 Ableson Ltr.").

---

[3] Declaration of Zach Ruby ("Ruby Decl.") Ex. A, Pls.' First Set of Reqs. for Prod. of Docs. to Defs. ("Reqs. for Produc." or "RFPs"); Ruby Decl. Ex. B, Pls.' First Set of Interrogs. to Defs. ("Interrogs." or "ROGs").
[4] Ruby Decl. Ex. C, Defs.' Resp. to Pls.' RFPs ("RFP Resps."); Ruby Decl. Ex. D, Defs.' Resp. to Pls.' ROGs ("ROG Resps.").
[5] Ruby Decl. Ex. F, Defs.' Revised Resps. to Pls.' ROGs ("Rev. ROG Resps."); Ruby Decl. Ex. G, Defs.' Revised Resps. to Pls.' RFPs ("Rev. RFP Resps.").

Following the Court's January 19, 2022, status conference, Rite Aid identified further areas for compromise. Ruby Decl. Ex. I, 1/21/2022 Ltr. from Mr. Ableson to Ms. Hibbert. The parties then met and conferred on January 25, 28, and again on January 31, 2022. The parties came close to an agreement on these issues, but then Rite Aid withdrew its offers of compromise on all disputed categories of documents because it disagreed with Plaintiffs' insistence on one disputed sub-category: documents related to state Medicaid agencies' correspondence with Rite Aid pertaining to the RSP and its U&C reporting practices. Ruby Decl. Ex. J, 1/31/2022 E-mail from Ms. Bloom to Mr. Ruby. The parties did agree, however, that one of the five issues discussed at the January 19, 2022 status conference—the dispute related to Rite Aid's retail prices—is now moot. *Id.*

## LEGAL STANDARD

"Discovery on a matter is permissible if it is (1) 'relevant to any party's claim or defense' and (2) 'proportional to the needs of the case.'" *Baker v. Cenlar FSB*, No. 20-CV-0967 (JRT/HB), 2021 WL 2493767, at *3 (D. Minn. June 18, 2021) (Bowbeer, J.) (quoting Fed. R. Civ. P. 26(b)(1)). The factors courts consider in their analysis of proportionality include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

"Once the party seeking the discovery has made a threshold showing of relevance, the court generally looks to the party resisting discovery to show specific facts demonstrating lack of relevancy or undue burden." *Id.* (citing *Inline Packaging, LLC v.*

5

*Graphic Packaging Int'l, Inc.*, No. 15-CV-3183 (ADM/LIB), 2016 WL 6997113, at *7 (D. Minn. Sept. 6, 2016)). But ultimately it is "[t]he court's responsibility, using all the information provided by the parties, [] to consider [the proportionality factors] in reaching a case-specific determination of the appropriate scope of discovery," irrespective of how the evidence is ultimately brought forward. *Id.* (quoting Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment) (third alteration in original).

## ARGUMENT

Rite Aid created the RSP as a pretext to artificially divide its customer base, allowing it to charge one price to cash customers while reporting an inflated and, therefore, false price to TPPs, including Plaintiffs, as its U&C price. Rite Aid engaged in this deception not just against Plaintiffs but against all TPPs in the industry, and it engaged in this fraud for over a decade. Thus, it is no surprise that other TPPs have also filed suit against Rite Aid for damages caused by its fraudulent program. Some, like the Federal Employee Benefit Program, have specifically amended their contracts to insist that Rite Aid include the RSP price in its U&C submission. Others, like Plaintiffs, have gone a step further, suing Rite Aid for reporting inflated and false U&C prices. Documents related to Rite Aid's communications with these other TPPs and the PBMs[6] responsible for adjudicating claims are material to this case, addressing every element of Rite Aid's fraud:

_____

[6] PBMs are third-party intermediaries charged with adjudicating, on behalf of TPPs, claims for reimbursement of prescription services submitted by retail pharmacies like Rite Aid. As their name entails, they serve as the intermediary between the pharmacies submitting the claims and the TPPs paying the claims.

6

***False Statements.*** Rite Aid made false statements about the same program to multiple TPPs throughout the industry. Understanding the statements and representations Rite Aid made to other TPPs would be probative of the falsity of statements and representations relied upon by Plaintiffs.

***Knowledge of Falsity.*** That other TPPs questioned the legitimacy of Rite Aid's RSP is probative of Rite Aid's knowledge of the falsity of its statements. For example, Rite Aid's communications with Caremark on behalf of the Federal Employee Benefit Program ultimately led to Rite Aid properly incorporating RSP prices into its U&C. *See, e.g.*, Ruby Decl. Ex. K, Br. for *Amicus Curiae* Rite Aid Corp. in Supp. of Def.-Appellant Kmart Corp. and Reversal at 9, 2015 WL 3498016, filed in Case No. 15-1502, *United States ex rel. Garbe v. Kmart Corp.* (7th Cir. May 27, 2015) (Dkt. 19). These communications and Rite Aid's internal reactions—including those generated in litigation or commenting on litigation—are relevant to knowledge.

***Intent.*** That other TPPs consistently questioned the RSP, and ultimately filed lawsuits, is also probative of Rite Aid's intent to deceive. Rite Aid's failure to openly communicate about the RSP with not only the Plaintiffs' PBMs but PBMs throughout the market shows that these misstatements were not merely mistakes or miscommunications but evidence of Rite Aid's pervasive intent to falsify its U&C reporting.

***Reliance.*** Documentation that other sophisticated TPPs were similarly deceived by Rite Aid's fraudulent U&C reporting is probative to Plaintiffs' reasonable reliance on Rite Aid's misstatements as well.

*Damages.* To date, despite Plaintiffs' May 21, 2021 request, Rite Aid has still failed to produce any data necessary to create a reliable damages model because of unspecified "highly technical issues" that Rite Aid has been working on with its "technical staff to fully understand." Ruby Decl. Ex. L, 10/12/2021 Ltr. from Mr. Ableson to Mr. Ruby at 1-2 ("10/12/2021 Ableson Ltr."). This data was likely requested and produced in other litigations. Rite Aid may well be able to simply reproduce it in this litigation.

For these reasons and others explained below, Plaintiffs now move to compel.

## I.  DOCUMENTS REFLECTING OTHER TPPS' AND PBMS' POSITIONS ON RITE AID'S RSP AND U&C REPORTING PRACTICES ARE HIGHLY RELEVANT TO THIS CASE.

Rite Aid has refused to produce any communications between it and the other TPPs that it may have defrauded, as well as any communications with their PBMs. Plaintiffs' RFP No. 11 asks Rite Aid for these communications. Specifically, it requests

> All Communications between [Rite Aid] and any TPP other than Plaintiffs related to (1) any Claim Submissions, (2) any Reported U&C Charge, or (3) any Discount Program from January 1, 2007 to the present.

Ruby Decl. Ex. A, Reqs. for Produc. at 13. In short, the request asks for Rite Aid's communications with others in the industry regarding claim submissions, U&C prices, or drug discount programs such as the RSP.

In response, Rite Aid provided over a page of boilerplate objections and refused to produce any documents on the basis that communications with entities other than Plaintiffs are irrelevant. *E.g.*, Ruby Decl. Ex. C, RFP Resps. at 45-46; Ruby Decl. Ex. L 10/12/2021 Ableson Ltr., at 4 ("What Defendants are declining to produce is

communications with *other* TPPs that have never adjudicated any claims to be paid by Plaintiffs, and which therefore have no relevance to Plaintiffs' claims."). After a lengthy meet and confer, Rite Aid amended its discovery responses to remove many of its boilerplate objections, but it maintained its position that communications with TPPs other than Plaintiffs and PBMs other than the specific PBMs that adjudicated Rite Aid's claims for reimbursement from Plaintiffs are (1) irrelevant to the current proceedings and (2) otherwise implicate confidential, trade secret information, presumably accounting for increased burden. *E.g.*, Ruby Decl. Ex. F, Rev. ROG Resps. at 7-8 (listing "Specific Categorical Objections" to "PBMs Other Than Plaintiffs' PBMs," "Private Payers Other Than Plaintiffs," and "Government Payers"); Ruby Decl. Ex. G, Rev. RFP Resps. at 7 (same). Neither of these bases is sufficient to withhold production. Rite Aid's complete, revised response is reprinted below:

> Rite Aid reasserts and incorporates each of the General Objections. Rite Aid further objects to this Request to the extent it seeks documents and communications concerning Claims Submissions without regard to whether the document or communication has any bearing on Rite Aid's reported U&C prices or the Rx Savings Program. Rite Aid further objects to this Request to the extent it seeks the contents of Claims Submissions that concern customers other than Plaintiffs' members, such as highly sensitive, HIPAA-protected health information for Persons and transactions not at issue in this litigation. Rite Aid further objects to this Request as compound. Based on the foregoing specific objections and the Specific Categorical Objections, Rite Aid does not intend to produce documents in response to this request. For the avoidance of any doubt, Rite Aid clarifies that if a document responsive to this request falls within a different category of documents that Rite Aid has already agreed to produce, then Rite Aid will produce that document.

Ruby Decl. Ex. G, Rev. RFP Resps. at 14-15. Rite Aid's substantive objections are addressed in further detail below.[7]

### A. Rite Aid's Communications With TPPs Other Than Plaintiffs and PBMs Other Than Those That Processed Plaintiffs' Claims Are Relevant To Multiple Issues In This Case.

Rite Aid's communications with other TPPs and PBMs are relevant to multiple issues in this case. To provide a complete, proper adjudication of Plaintiffs' claims against Rite Aid, this Court is entitled to understand the full scope of Rite Aid's fraudulent scheme. Rite Aid's RSP was not just a sham program meant to deceive the Plaintiffs in this case; it was meant to deceive all TPPs responsible for reimbursing prescriptions filled at Rite Aid stores for customers paying with insurance. Consequently, Rite Aid is facing a full battery of lawsuits brought by other TPPs including (1) other insurers, (2) government insurance programs such as Medicare and Medicaid, and (3) consumer fraud actions. *Infra* § II.

Rite Aid's communications with these entities are relevant for the same reasons that documents produced in litigation brought by these entities are relevant: Rite Aid's fraud against them is part of the very same fraud it perpetrated against the Plaintiffs. *Supra* at 1-4, 6-8. Rite Aid created the RSP as a pretext to avoid submitting prices

---

[7] Rite Aid's remaining objections are merely boilerplate and are thus waived. *See, e.g.*, *Fredin v. Middlecamp*, No. 17-CV-3058 (SRN/HB), 2019 WL 11541162, at *3 (D. Minn. Oct. 25, 2019) (Bowbeer, J.) ("As Fredin made no such specific objections in his responses to the above requests, let alone indicated whether and to what extent he was withholding documents responsive to those requests on the basis of such objections (as required by Rule 34(b)(2)(B)), any such objections were waived, and the Court will not consider any *post hoc* arguments in his opposition memorandum regarding the relevance or burdensomeness of these requests.").

charged under this program as its U&C prices, irrespective of the industry standard, contract language, or regulation. *Id.* Rite Aid's false characterization of this program to these TPPs as well as the TPPs' reliance on Rite Aid's statements, are probative to issues in this case, including Rite Aid's false statements, knowledge of falsity, intent, and reliance, as discussed above. *Supra* at 6-8. Put more simply, Rite Aid tricked many of the largest and most sophisticated health plans in the United States—including government entities like Medicare and Medicaid—into thinking that the U&C prices reported to these entities were Rite Aid's lowest and most widely and consistently available prices, when in reality the prices it was offering through the RSP were not being included in its calculation of U&C. This is all probative of Rite Aid's pattern of deception.[8]

---

[8] *See, e.g.*, Advisory Committee Notes to the 2000 Amendments of Rule 26(b) ("[a] variety of types of information not directly pertinent to the incident suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard."); *Beseke v. Equifax Info. Servs., LLC*, No. 17-CV-4971-DWF-KMM, 2018 WL 6040016, at *4 (D. Minn. Oct. 18, 2018) ("[A] number of cases support Mr. Beseke's argument that complaints and lawsuits regarding similar cases are relevant."); *Ahlgren v. Muller*, No. 19-CV-303 (JRT/LIB), 2019 WL 12046350, at *6 (D. Minn. June 14, 2019) ("Defendants' business dealings are the same type of services underlying Plaintiff's present causes of action, and therefore, the discovery sought by Interrogatory No. 5 is related to Plaintiff's causes of action."); *Hammes v. Yamaha Motor Corp.*, No. CV 03-6456 (MJD/JSM), 2005 WL 8163230, at *4 (D. Minn. Nov. 18, 2005) ("While events that occurred after the accident or the recall may have no relevance to plaintiffs' claims of inadequate warnings or failure to issue the recall on a timely basis, evidence regarding problems of the same type alleged by plaintiffs on the same type of throttle as was used on Hammes's motorcycle could lead to the discovery of admissible evidence on plaintiffs' claims of design defect. In sum, Yamaha Japan shall identify all reports or complaints of a stuck throttle on a YZ125 and YZ250 motorcycle with the same throttle as the throttle on the motorcycle driven by Hammes, regardless of date.").

Furthermore, the evidence sought by Plaintiffs here is relevant to one of the key issues in the case: whether Rite Aid was required to include its RSP prices in its calculation of U&C. The answer to that question is influenced by industry standards, among other things. Industry standards pertaining to the requirements for U&C reporting have existed for decades—both before and after the introduction of prescription drug discount programs onto the market in 2006. Compl. ¶¶ 30-42. Those standards are reflected throughout the industry in contract definitions of U&C, regulatory definitions of U&C, provider and pharmacy manuals, and in guidance documents. *Id.* This includes Medicare and Medicaid regulations. As the Seventh Circuit in *Garbe* made clear: "[U&C] is included in state regulations, plans, and contracts related to Medicare Part D because Medicare and Medicare regulations demand that it be." *Garbe*, 824 F.3d at 644 (citing Medicaid regulation 42 C.F.R. § 447.512(b) (incorporating the lower of formula into Medicaid's reimbursement requirements)). The Seventh Circuit continued to explain that the meaning of U&C "in many state regulations, plans, and contracts is lifted from the federal regulations without significant modification." *Id.*; *see also* 42 C.F.R. § 423.100 (defining U&C for Medicare Part D as "the price that an out-of-network pharmacy or a physician's office charges a customer who does not have any form of prescription drug coverage for a covered Part D drug").

Finally, production of these documents and communications would only be fair as Rite Aid has made clear that it intends to rely on various statements made by PBM representatives regarding other contracts and other pharmacies. For example, in its motion to dismiss, Rite Aid argued that "several of the PBMs at issue—including Prime

12

Therapeutics—have declared in federal court that their agreements do not require pharmacies to report prices available through programs like the RSP as U&C prices." Dkt. No. 44 at 20 (emphasis omitted) (citing Dkt. No. 45-5 (Ex. E), Decl. of Bretta Grinsteinner (Prime) (Mar. 8, 2018) filed in *United States ex rel. Schutte v. Supervalu Inc.*, No. 3:11-cv-3290 (C.D. Ill.)); Dkt. 45-6 (Ex. F), Decl. of Bretta Grinsteinner (Prime) (Nov. 29, 2018) filed in *United States ex rel. Proctor v. Safeway, Inc.*, No. 3:11-cv-3406 (C.D. Ill.); and, Dkt. 45-7 (Ex. G), Decl. of Michael D. Reichardt (Optum) (Nov. 20, 2016) filed in *Corcoran v. CVS Pharmacy, Inc.*, No. 15-cv-03504-YGR (N.D. Cal.)). Setting aside the issues with Rite Aid's argument—most obviously that none of these declarations directly address the RSP—Rite Aid has now made clear that it intends to rely on declarations supplied by PBMs to establish what it argues reflects an industry standard position as to whether discount programs like the RSP should properly be reported as the pharmacy's U&C price.

Plaintiffs are aware of several similar declarations filed in other cases, and Plaintiffs have expressly asked Rite Aid whether it will either (1) refrain from incorporating those or similar declarations into the case or (2) will provide documents and communications between Rite Aid and the associated PBM on the same topic: whether discount programs such as the RSP should be submitted as the pharmacy's U&C. *E.g.*, Ruby Decl. Ex. M, 1/26/2022 Ltr. from Mr. Ruby to Mr. Ableson at 3. But Rite Aid has both (1) refused to refrain from relying on these declarations and at the same time (2) refused to produce documents to allow Plaintiffs to test the bases for them and their

13

applicability to the facts of this case. *E.g.*, Ruby Decl. Ex. N, 1/27/2022 Ltr. from Mr. Ableson to Mr. Ruby at 2-3.[9]

> **B.     Any Purported Burden Rite Aid Faces In Producing These Documents Is Far Outweighed By The Probative Nature Of This Information And Is Easily Resolved.**

Even though Rite Aid has already collected and produced the requested documents in similar litigations, *infra* § II, it nonetheless raises two primary arguments as to the burden associated with their production here. Neither is meritorious.

*First*, Rite Aid argues that production of documents related to other TPPs and their PBMs implicate "confidential trade secret contractual relationships" thus imposing a burden on their production. Ruby Decl. Ex. G, Rev. RFP Resps. at 7; Ruby Decl. Ex. F, Rev. ROG Resps. at 7. But this is belied by Rite Aid's own positions in this proceeding. In support of its motion to dismiss, Rite Aid publicly filed briefing addressing—and in some cases quoting—contracts similar to what it now claims cannot be produced because of confidentiality restrictions, complete with specific—presumably confidential—rate information. *E.g.*, Dkt. No. 45 at Exs. D, 3-6 ("Under this mechanism, Monmouth pays

---

[9] For example, Plaintiffs are aware that Amber Compton offered self-serving testimony that "[p]rices offered under legitimate membership programs (*i.e.*, prices not offered to all of a given pharmacy's customers) are generally not included in the pharmacy's usual and customary price under the Express Scripts, Inc. Pharmacy Provider Agreement [with CVS]." *E.g.*, Ruby Decl. Ex. O, Decl. of Amber D. Compton (Nov. 21, 2016) ¶ 10, filed in *Corcoran v. CVS Pharmacy, Inc.*, No. 15-cv-03504YGR (N.D. Cal.) (Dkt. 280-24). Yet, Rite Aid is refusing to provide documents and communications with Express Scripts, Inc. pertaining to its treatment of Rite Aid's RSP and Rite Aid's U&C reporting practices. These documents are key to assessing the accuracy and truthfulness of the information provided in the declarants, as well as Rite Aid's position that they reflect the industry standard.

on an annualized aggregate basis no more and no less than a specified percentage of AWP (*e.g.*, AWP-79.50% or AWP-19.00%) . . . .").

In any event, the parties negotiated an extensive Protective Order in this case, specifically to protect all parties' confidential information. Dkt. No. 78. The Protective Order allows parties to produce documents under the "Highly Confidential – Attorneys' Eyes Only" status, thereby limiting disclosure to only "the attorneys litigating the consolidated action" as well as a handful of others such as the relevant experts and the jury. *Id.* at 3, 4, 6. Similarly, the parties have agreed that certain "highly sensitive competitive or proprietary information (*e.g.*, business trade secrets, competitive formulas)," may be redacted (Dkt. No. 85 at 10), meaning these documents are further protected for this reason as well. Indeed, in prior correspondence, Plaintiffs specifically asked Rite Aid to "tell us why the Protective Order [which] issued in this case does not afford sufficient protection to both Rite Aid and third parties (especially in light of the AEO provisions)." Ruby Decl. Ex. P, 9/24/2021 Ltr. from Mr. Ruby to Mr. Ableson, at 3 ("9/24/2021 Ruby Ltr."). To date, Rite Aid has identified no deficiencies. Accordingly, the Court should disregard this objection as well.

*Second*, Rite Aid claims that production of documents from all PBMs "would impose a considerable burden on Rite Aid" because it has contracted with over 100 PBMs during the relevant period. Ruby Decl. Ex. H, 1/14/22 Ableson Ltr. at 4. But this problem, too, can be remedied by the appropriate use of custodians and search terms. The parties have exchanged search terms specifically designed to lessen the burden. Rite Aid has identified no reason the terms cannot be applied to these documents as well, if they

have not already been. The issue is whether Rite Aid's reviewers will mark these documents "responsive" or "non-responsive" in its document production software. In short, if Rite Aid merely provides a list of these 100 PBMs and identifies the appropriate individuals who would have been communicating with them, any burden is wiped away by technology assisted review. Ultimately, Rule 26 is a balancing test. Fed. R. Civ. P. 26(b)(1). Plaintiffs are seeking damages of up to $1.8 billion. Compl. at ¶ 71. The requested evidence is material to the case. Accordingly, Rite Aid needs to search for it, unless it can identify a specific, substantial burden, which it has not done.

### C.   Documents and Communications Related to Medicaid Fee-For-Service Programs Should Not Be Excluded From Production.

Rite Aid claims that documents related to states' Medicaid fee-for-service programs should be carved out of the other TPP documents and communications it is obligated to produce because "[t]he reimbursement terms for claims submitted to these types of government payers are defined by unilaterally imposed regulations and statutes, as opposed to bilaterally negotiated private contracts like those entered into by Rite Aid and Plaintiffs' PBMs." Ruby Decl. Ex. H, 1/14/22 Ableson Ltr. at 4. But Rite Aid never explains why this is anything other than a superficial and meaningless distinction. In reality, the requirements under many state Medicaid regulations mirror the reimbursement terms set forth in private contracts between pharmacies and PBMs, as well as between PBMs and TPPs. As Rite Aid asserted in its brief filed in the Sixth Circuit in 2020 regarding Connecticut's Medicaid requirements, "Connecticut's Medicaid regulations, like all the other billing rules referenced in [plaintiff's] complaint, required

that pharmacies bill Medicaid no more than their 'usual and customary' prices." Ruby Decl. Ex. Q, Br. of Appellee Rite Aid Corp. at 24, 2020 U.S. 6TH CIR. BRIEFS LEXIS 297, filed in *United States ex rel. Rahimi v. Rite Aid Corp.*, No. 20-1063 (6th Cir.) (Dkt. 35).[10] The same is true for the contracts governing the relationships between Rite Aid and Plaintiffs' PBMs, as well as the contracts governing the relationships between Plaintiffs and Plaintiffs' PBMs. *See* Compl. ¶¶ 35-39.

To the extent Rite Aid claims that the act of negotiating rendered its contractual obligations to report accurate U&C prices for claims reimbursed by private insurers, including Managed Medicaid, different than those imposed by statute or regulations under Medicaid fee-for-service programs, this too is belied by Rite Aid's own words. In short, as described in its amicus brief to the Seventh Circuit on behalf of a "comparable" discount program offered by Kmart, Rite Aid consistently treated U&C definitions imposed by statute or regulation as equivalent to those negotiated by contract:

- "In addition to its significant interest, Rite Aid Also has a distinct perspective derived from its extensive experience dealing with *state-law and federal-contract definitions of U & C pricing.*" Ruby Decl. Ex. K, Br. for *Amicus Curiae* Rite Aid Corp. in Supp. of Def./Appellant Kmart Corp. and Reversal at

---

[10] *Rahimi* involved allegations under the False Claims Act on behalf state Medicaid agencies, including California, Colorado, Connecticut, Delaware, the District of Columbia, Georgia, Indiana, Louisiana, Massachusetts, Michigan, Nevada, New Jersey, New York, North Carolina, Rhode Island, Tennessee, Virginia, and Washington. *See* Ruby Decl. Ex. R, Third Am. Compl. (May 11, 2018), No. 2:11-cv-11940-SJM-MAR, filed in *Rahimi v. Rite Aid Corp.*, (E.D. Mich.) (Dkt. No. 71).

2, 2015 WL 3498016, filed in *United States ex rel. Garbe v. Kmart Corp.*, Case No. 15-1502 (7th Cir.) (Dkt. 19) (emphasis added).

- "Thus, <u>*states and federal contractors*</u> that placed the same gloss on U & C pricing as the district court did here have only done so after *amending* their <u>*laws or contracts*</u> to change the definition of U & C price expressly to include discount prices offered to program members." *Id.* at 4-5 (emphasis added)

- "A pharmacy's U & C price <u>*is generally understood in the healthcare industry*</u> as the pharmacy's 'cash price to the general public,' although the definition of a pharmacy's U & C price can vary from state to state." *Id.* at 10 (emphasis added).

- "<u>*Like the amendments to state law discussed above, the amendments to the*</u> <u>*contract*</u> further confirm that in the absence of other language affirmatively indicating to the contrary, prices offered to members of drug-discount programs are not prices offered to members of the 'general public' for U & C purposes." *Id.* at 19-20 (emphasis added).

But it is not surprising that Rite Aid is taking the opposite position here, arguing that U&C definitions governed by statute or regulation are irrelevant to those governed by contract. Several State Medicaid agencies, including those identified as plaintiffs in *Rahimi*, have made clear to Rite Aid that the discount prices offered through its RSP constituted Rite Aid's U&C price—that is, the lowest price offered widely and consistently to the general public. *See id.* at 2-4 (explaining that Connecticut and Oregon's Medicaid programs required the submission of RSP prices as Rite Aid's U&C

prices). Rite Aid wants to hide this evidence not because there is any significant distinction between the State Medicaid programs and the reimbursement relationships at issue here, but because this evidence makes clear that Rite Aid knew what it was doing was wrong, ran afoul of industry standards, and its scheme resulted in TPPs making substantial overpayments to Rite Aid for prescription drug services. Simply put, this evidence is relevant to Plaintiffs proving that Rite Aid had the requisite knowledge and intended to defraud TPPs, including Plaintiffs.

At the conference on February 18, 2022, the Court further inquired into the incremental value of the communications and documents related to Medicaid fee-for-service programs. The value of this evidence cannot be understated. *First*, as noted above, and as referred to by Rite Aid in its amicus brief filed in *Garbe*, various State Medicaid agencies have taken a position regarding U&C reporting requirements that is *consistent* with the alleged industry standard in this case and *inconsistent* with Rite Aid's key defense (*i.e.*, that RSP prices were not required to be reported as U&C). *Second*, and maybe not so obvious, is the fact that limiting the industry evidence to only PBMs paints a false portrait of the industry as a whole, especially because "PBMs have incentive to encourage or conceal inflated U&C prices – ***PBMs make more money when U&C prices are higher***." *Sheet Metal Workers Loc. No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.*, 540 F. Supp. 3d 182, 191 (D.R.I. 2021) (emphasis added). Thus, there is good reason Rite Aid seeks to limit the industry evidence to only that from selected PBMs – those PBMs are inherently biased and incentivized to align their views with Rite Aid. Other industry participants, such as State Medicaid agencies, are not. Accordingly,

allowing Plaintiffs to uncover this impartial evidence promotes fairness and also provides the Court with a well-rounded record to assist it and any other triers-of-fact in making ultimate findings in the case.

## II.   RITE AID IMPROPERLY SEEKS TO WITHHOLD DOCUMENTS RELATED TO OTHER LITIGATIONS ALSO ALLEGING FRAUD RELATED TO RSP.

Plaintiffs are not the only victims of Rite Aid's fraudulent conduct. Rite Aid set out to defraud TPPs and health plan customers alike by (1) creating a sham membership program (the RSP), and (2) using it to conceal its true U&C drug prices, all while reporting inflated retail prices as U&C to all TPPs, regardless of contract or governing regulation. *Supra* at 1-4, 6-8. Not surprisingly, Rite Aid has been sued for the same conduct by multiple plaintiffs in multiple venues, including:

- *Stafford v. Rite Aid Corp.*, No. 3:17-cv-01340-AJB-JLB (S.D. Cal.)

- *Josten v. Rite Aid Corp.*, No. 3:18-cv-00152-AJB-JLB (S.D. Cal.)

- *United States ex rel. Rahimi v. Rite Aid Corp.*, No. 2:11-cv-11940 (E.D. Mich.)

- *Monmouth v. Rite Aid Corp.*, No. 2:20-cv-02024 (E.D. Pa.)

- *Envolve Pharmacy Sols., Inc. vs. Rite Aid Hdqtrs. Corp.*, No. N19C-12-214 (Del. Super. Ct.)

- *State of Miss. v. Rite Aid Corp.*, No. 17-CV-00429-CW (Miss. Cir. Ct.)

- *Humana Health Plan, Inc. v. Rite Aid Hdqtrs. Corp.*, No. 01-19-0000-4057 (American Arbitration Association)

Ruby Decl. Ex. F, Rev. ROG Resps. at 15-18. Each of these lawsuits address the identical issues presented by this case: Rite Aid's exclusion of RSP prices from the U&C prices reported to TPPs and PBMs.

Plaintiffs' served RFP Nos. 15 and 16 to investigate these issues. Plaintiffs' RFP No. 15 asks Rite Aid for, "All Documents or Communications related to any Litigation as identified in Your response to Interrogatory No. 4," Ruby Decl. Ex. A, RFPs at 14, and RFP No. 16 asks for

> All Documents produced or otherwise provided in any Litigation as identified in Your response to Interrogatory No. 4, including but not limited to: a. Documents sufficient to identify any such Litigations; b. All requests for production, interrogatories, or civil investigative demands relating to such Litigations, including any such actual subpoenas, civil investigative demands, or document requests from any entity; c. Documents sufficient to identify any witnesses or custodians, disclosed and/or identified by Rite Aid or another party as having relevant testimony or documentary evidence in such Litigation; d. All document productions and witness discovery responses produced by Rite Aid in response to discovery requests in such Litigations; Transcripts and marked exhibits from all depositions taken in such Litigations, as well as video and audio recordings of such depositions.

Ruby Decl. Ex. A, RFPs, at 14-15. In sum, Plaintiffs' RFP Nos. 15 and 16 ask Rite Aid to identify certain pertinent documents and communications from other litigations also alleging that the RSP was a fraud, serving only to give Rite Aid a pretext to inflate its reimbursement claim submissions.[11] Rite Aid's response to both RFPs is reprinted below:

> Rite Aid reasserts and incorporates each of the General Objections set forth above. Rite Aid further objects to this Request on the grounds that it incorporates the phrase 'related to any Litigation' causes it to be so vague, ambiguous, and overly broad as to be unworkable. Rite Aid further objects to this Request as being unduly burdensome, seeking documents irrelevant to the claims and defenses of the parties, and seeking 'cloned discovery' from other lawsuits. Rite Aid further objects to this Request to the extent it seeks the production of documents protected from disclosure because they were created and exchanged pursuant to settlement negotiations. Based on the foregoing specific objections and the Specific Categorical Objections, Rite Aid does not intend to produce documents in response to this request. For the

---

[11] Both RFP Nos. 15 and 16 reference Interrogatory No. 4, which is fully reprinted below. *Infra* § III.

> avoidance of any doubt, Rite Aid clarifies that if a document responsive to this Request falls within a different category of documents that Rite Aid has agreed to produce, then Rite Aid will produce the document.

Ruby Decl. Ex. G, Rev. RFP Resps. at 17-18 (RFP No. 15).

> Rite Aid reasserts and incorporates each of the General Objections set forth above. Rite Aid further objects to this Request as being unduly burdensome, seeking documents irrelevant to the claims and defenses of the parties, and seeking 'cloned discovery' from other lawsuits. Based on the foregoing specific objections and the Specific Categorical Objections, Rite Aid does not intend to produce documents in response to this request. For the avoidance of any doubt, Rite Aid clarifies that if a document responsive to this Request falls within a different category of documents that Rite Aid has agreed to produce, then Rite Aid will produce that document.

*Id.* at 18-19 (RFP No. 16).

As discussed above, the parties met and conferred for months related to the scope of production in response to Plaintiffs' RFP Nos. 15 and 16. *Supra* at 4-5. During that process, Rite Aid indicated that it was refusing to produce documents in response to these requests for two reasons: *First*, it claimed that "documents produced in other cases are irrelevant to the claims in this case because this case is about the interpretation of specific contracts whereas the other cases also involved analysis of various public insurance statutes and regulations." Ruby Decl. Ex. P, 9/24/2021 Ruby Ltr., at 3. Rite Aid took the position that "[c]ourts routinely reject these kinds of requests to produce 'cloned discovery,' *i.e.*, entire sets of documents produced in other cases." Ruby Decl. Ex. L, 10/12/2021 Ableson Ltr., at 3-4.

*Second*, Rite Aid indicated that production in response to these RFPs would be "unduly burdensome because the other cases involved confidential contracts for PBMs other than those involved in adjudicating claims in this case that would require redaction

and would further require Rite Aid to provide notice or obtain consent from those non-parties." Ruby Decl. Ex. P, 9/24/2021 Ruby Ltr., at 3; *see also* Ruby Decl. Ex. H, 1/14/22 Ableson Ltr., at 2. These objections lack merit and should be rejected.[12]

### A.   The Requests Seek Documents That Are Relevant and Do Not Seek Improper Cloned Discovery.

Rite Aid has been sued by multiple industry participants all making the same basic allegation: Rite Aid's RSP was a sham, created strictly as a pretext to enable Rite Aid to report inflated and false U&C prices, regardless of contract language. *Supra* 1-4, 6-8. Indeed, Rite Aid has already acknowledged the relevance of these cases in prior filings. For example, in its motion to dismiss the complaint, Rite Aid refers to *Monmouth v. Rite Aid Corp.*, No. 2:20-cv-02024 (E.D. Pa.) as a *"related action"* (Dkt. 44 at 17 n.6) (emphasis added), and characterizes *United States ex. rel. Rahimi v. Rite Aid Corp.*, No. 2:11-cv-11940 (E.D. Mich.) as a "*substantively similar U&C lawsuit*," (*id.* at 34) (emphasis added). Further, in discovery correspondence, Rite Aid characterizes *Mississippi v. Rite Aid Corp.*, 16-cv-1390 (Chancery Ct. of Desoto Cnty., Miss., 3d. Chancery Dist.) as a "proceeding pending against Rite Aid Hdqtrs. Corp. *based on similar allegations* . . . ." Ruby Decl. Ex. L, 10/12/2021 Ableson Ltr., at 3 (emphasis

---

[12] Rite Aid's remaining objections are merely boilerplate (Ruby Decl. Ex. G, Rev. RFP Resps. at 17-19), and are thus waived. *See, e.g.*, *Fredin*, 2019 WL 11541162, at *3 (Bowbeer, J.) ("As Fredin made no such specific objections in his responses to the above requests, let alone indicated whether and to what extent he was withholding documents responsive to those requests on the basis of such objections (as required by Rule 34(b)(2)(B)), any such objections were waived, and the Court will not consider any *post hoc* arguments in his opposition memorandum regarding the relevance or burdensomeness of these requests.").

added). Thus, each suit against Rite Aid addresses the same issues presently before the Court, and Rite Aid's "Documents or Communications related to any" of these litigations and any "Documents produced or otherwise provided in any" of these litigations are facially relevant to these actions. Ruby Decl. Ex. A, RFPs, at 14.

Part and parcel to Rite Aid's objection to relevance is its objection that RFP Nos. 15 and 16 constitute improper "cloned discovery." *Not so*. "Materials produced and deposition testimony given in other litigation"—so called "cloned discovery"—"is generally discoverable upon a showing of substantial similarity between the prior and current actions." *Costa v. Wright Med. Tech., Inc.*, No. 17-CV-12524-ADB, 2019 WL 108884, at *1 (D. Mass. Jan. 4, 2019) (quoting *Town of Westport v. Monsanto Co.*, No. CV 14-12041-DJC, 2015 WL 13685105, at *3 (D. Mass. Nov. 5, 2015)) (internal quotation marks omitted); *cf. In re Hardieplank Fiber Cement Siding Litig.*, No. 12-MD-2359, 2014 WL 5654318, at *3 (D. Minn. Jan. 28, 2014) (ordering production of cloned discovery after finding that "[a]s narrowed to lawsuits that involve the quality or durability of James Hardie's siding, these requests for documents are reasonably calculated to lead to the discovery of admissible evidence."). This type of discovery "is often attractive to litigants because it can reduce the burden and expense of obtaining relevant information and help the parties narrow the issues in dispute more rapidly than they otherwise could." *See Costa*, 2019 WL 108884, at *1

Plaintiffs' requests are proper under this rule because the cases identified above are substantially similar to the instant litigation. As discussed above, Rite Aid's RSP operated as an industry-wide fraud, deceiving all TPPs—public and private—in the same

24

manner. *Supra* 1-4, 6-8. Accordingly, these other cases plead substantially similar facts and make substantially similar claims, as discussed above, and Rite Aid has characterized them that way in pleadings and correspondence between the parties. Further, Rite Aid has already attempted to use evidence from these other, related litigations, including a memorandum of law filed in the *Monmouth* action. Dkt. 44 at 17, Dkt. 45-4 (Ex. D). Thus, by Rite Aid's own admission, there is "substantial similarity between the prior and current actions," and this discovery is appropriate. *See Costa*, 2019 WL 108884, at *1 (quoting *Monsanto*, 2015 WL 13685105, at *3).[13]

### B.   Rite Aid Has Not Demonstrated Any Burden, and The Relevance Of These Documents Far Outweigh Any Potential Burden.

Rite Aid's objection that the documents requested by RFP Nos. 15 and 16 would be "unduly burdensome because the other cases involved confidential contracts for PBMs other than those involved in adjudicating claims in this case that would require redaction and would further require Rite Aid to provide notice or obtain consent from those non-parties" (Ruby Decl. Ex. P, 9/24/2021 Ruby Ltr., at 3), is inapposite for the simple reason

---

[13] *See also, e.g.*, *In re Hardieplank*, 2014 WL 5654318, at *3  (allowing cloned discovery where the other lawsuits addressed the same product at issue in the litigation between the parties); *Beseke*, 2018 WL 6040016, at *4 (observing that "a number of cases support Mr. Beseke's argument that complaints and lawsuits regarding similar cases are relevant."); *Whitman v. State Farm Life Ins. Co.*, No. 19-CV-06025-BJR, 2020 WL 5526684, at *3 (W.D. Wash. Sept. 15, 2020) ("[T]he instant lawsuit and *Vogt* have significant factual and legal overlap, with both suits against the same defendant asserting almost identical claims based on the same alleged misconduct. Both the instant suit and *Vogt* assert identical claims of breach of contract, conversion, and declaratory and injunctive relief based on Defendant's alleged wrongful conduct in overcharging his account and loading unauthorized factors into his plan's rates in a manner inconsistent with the terms of his policy. . . . Given the similarities in the Vogt and instant case, the Court concludes that Plaintiff has met his burden in showing that the Vogt production is relevant.").

that these documents have already been produced in other proceedings. Thus, whatever confidentiality provisions or consent requirements in the contracts with these third parties were already sought and granted and any necessary redactions have already been applied. Rite Aid fails to identify any specific details as to the burden imposed by this production, rendering the objection improper for this reason as well. *See, e.g.*, *In re Hardieplank*, 2014 WL 5654318, at *3 (ordering production of cloned discovery where defendant failed to "identif[y] any of the relevant lawsuits, disclose[] the number of lawsuits, or [disclose] the estimated . . . volume of pages at stake"). Further, as discussed above, the Protective Order fully protects the confidentiality of these documents, and Rite Aid has articulated no reason that such protections are insufficient. *Supra* § I.B. Thus, these objections should be disregarded as well.

## III.   RITE AID HAS REFUSED TO IDENTIFY ANY GOVERNMENTAL INVESTIGATIONS ADDRESSING ITS FRAUDULENT U&C REPORTING PRACTICES AND HAS FAILED TO PRODUCE ANY RELATED DOCUMENTS.

As discussed above, the RSP has come under scrutiny by both private and public entities, and Rite Aid's positions in similar disputes are undeniably relevant to understanding its state of mind and internal understanding of proper U&C reporting practices. *Supra* at 1-4, 6-8. Accordingly, in addition to requesting that Rite Aid identify all formal litigation surrounding the RSP, Plaintiffs requested that Rite Aid also identify all "governmental investigations," related to that same program and to produce documents associated with those investigations. Specifically, Plaintiffs served Interrogatory No. 4, which reads:

26

> Identify and describe all Litigation relating to each Discount Program, including but not limited to (i) the date the Litigation initiated, (ii) the relevant parties, (iii) the forum, (iv) whether the Litigation has concluded and, as applicable, the associated date and the amount of any resulting damages awards, settlements, or other payments paid by or to You.

Ruby Decl. Ex. B, Interrogs. at 10-11.[14] Consistent with its response to all of Plaintiffs' other discovery requests, Rite Aid initially raised a slew of boilerplate objections in response to these requests and refused to identify any governmental investigations related to the RSP. *Supra* at 4-5; Ruby Decl. Ex. D, ROG Resps. at 1-21, 29-30; Ruby Decl. Ex. F, Rev. ROG Resps. at 14-18; Ruby Decl. Ex. S, Defs.' Suppl. Rev. Resps. to Pls.' ROGs at 20-23 ("Suppl. Rev. ROG Resps."). To date, Rite Aid has only identified formal litigations related to the RSP, including one arbitration. Rite Aid's objections and response is reprinted below:

> Rite Aid reasserts and incorporates by reference each of the General Objections as if set forth fully herein, and specifically objects to this Interrogatory to the extent it seeks information concerning (a) Discount Programs or Offerings Other Than the Rx Savings Program, (b) confidential settlement discussions or resolutions, or (c) lawsuits or private arbitrations that do not allege Rite Aid reported inaccurate U&C prices. Without waiving the General Objections, and subject to the following specific objections and the Specific Categorical Objections, Rite Aid responds as follows: The following lawsuits and private arbitrations have been commenced against Rite Aid concerning the Rx Savings Program and U&C pricing, excluding this lawsuit:
>
> - *Stafford v. Rite Aid Corp.*, Case No. 3:17-cv-01340-AJB-JLB (S.D. Cal.)
>
>   o Filed Date: 6/30/2017

---

[14] As defined in the interrogatories, the term "Litigation" refers to "any formal or informal adjudicatory proceeding, including but not limited to lawsuits, *governmental investigations*, and arbitrations."  Ruby Decl. Ex. B, Interrogs. at 3 (emphasis added).

27

- o Parties: Plaintiff Byron Stafford; Defendants Rite Aid Corporation and Rite Aid Hdqtrs. Corp.

- o Not concluded.

- *Josten v. Rite Aid Corporation*, Case No. 3:18-cv-00152-AJB-JLB (S.D. Cal.)

  - o Filed Date: 1/23/2018

  - o Parties: Plaintiff Robert Josten; Defendants Rite Aid Corporation and Rite Aid Hdqtrs. Corp.

  - o Not concluded.

- *Rahimi ex rel. United States v. Rite Aid Corp.*, Case No. 2:11-cv-11940 (E.D. Mich.)

  - o Filed Date: May 3, 2011

  - o Parties: Relator Azam Rahimi; Plaintiffs United States of America, State of California, State of Indiana, State of Rhode Island, State of New York, State of Massachusetts, State of Connecticut, State of New Hampshire, State of Georgia, State of Michigan, State of Colorado, State of Delaware, District of Columbia, State of Louisiana, State of Nevada, State of New Jersey, State of Tennessee, State of Virginia, and State of Washington; Defendant Rite Aid Corporation

  - o The District Court entered a Judgment in favor of Defendant Rite Aid Corporation on December 12, 2019. The United States Court of Appeals for the Sixth Circuit affirmed the decision on June 29, 2021.

- *Monmouth v. Rite Aid Corporation.*, 2:20-cv-02024 (E.D. Pa.)

  - o Filed Date: April 27, 2020

  - o Parties: Plaintiffs County of Monmouth and Diane Scavello; Defendants Rite Aid Corporation and Rite Aid Hdqtrs. Corp.

  - o Not concluded.

- *Envolve Pharmacy Solutions, Inc. vs. Rite Aid Hdqtrs. Corp.*, Case No. N19C-12-214 (Del. Super. Ct.)

    ○ Filed Date: December 23, 2019

    ○ Parties: Plaintiffs Absolute Total Care, Inc., Ambetter of Magnolia Inc., Ambetter of North Carolina Inc., Ambetter of Peach State Inc., Arkansas Health & Wellness Health Plan, Inc., Arkansas Total Care, Inc., Bankers Reserve Life Insurance Company of Wisconsin, Blue Sky Health Plan, Inc., Bridgeway Health Solutions of Arizona, Inc., Buckeye Community Health Plan, Inc., Buckeye Health Plan Community Solutions, Inc., California Health & Wellness Plan, Carolina Complete Health, Inc., CentiCare Health Plan of Massachusetts, Inc., Celtic Insurance Company, Coordinated Care Corporation, Coordinated Care of Washington, Inc., Delaware First Health Plan, Inc., Hallmark Life Insurance Company, Health Net Access, Inc., Health Net Community Solutions of Arizona, Inc., Health Net Community Solutions, Inc., Health Net Health Plan of Oregon, Health Net Life Insurance Company, Health Net Life Reinsurance Company, Health Net Pharmaceutical Services, Health Net of Arizona Administrative Services, Inc., Health Net of Arizona, Inc., Health Net of California, Inc., Healthy Oklahoma Holdings, Inc., Healthy Washington Holdings, Inc., Home State Health Plan, Inc., IlliniCare Health Plan, Inc., Iowa Total Care, Inc., Isla Holding Co., Inc., Kentucky Spirit Health Plan, Inc., Iowa Total Care, Inc., Isla Holding Co., Inc., Kentucky Spirit Health Plan, Inc., Louisiana Healthcare Connections Inc., Magnolia Health Plan, Inc., Managed Health Services Illinois, Inc., Managed Health Services Insurance Copr., Michigan Complete Health, Inc., Nebraska Total Care, Inc., New York Quarterly Healthcare Corporation, Oklahoma Complete Health Inc., Peach State Health Plan, Inc., Pennsylvania Health & Wellness, Inc., SilverSummit Healthplan, Inc., Sunflower State Health Plan, Inc., Sunshine Health Community Solutions, Inc., Sunshine State Health Plan, Inc., Superior HealthPlan Community Solutions, Inc., Superior HealthPlan, Inc., Tennessee Total Care, Inc., Trillium Community Health Plan, Inc., University Health Plans, Inc., Virginia Total Care, Inc., Western Sky Community Care, Inc.; Defendants Rite Aid Hdqtrs. Corp. and Rite Aid Corporation.

- *State of Mississippi v. Rite Aid Corporation*, 17-CV-00429-CW (Miss. Cir.)

- o  Filed Date: June 28, 2016

- o  Parties: Plaintiffs State of Mississippi; Defendants Rite Aid Hdqtrs. Copr. And Rite Aid Corporation

- o  Not concluded.

- *Humana Health Plan, Inc. v. Rite Aid Hdqtrs. Corp.*, Case No. 01-19-0000-4057 (American Arbitration Association)

  - o  Filed Date: February 6, 2019

  - o  Parties: Plaintiffs Humana Health Plan, Inc., Humana Insurance Company, and Humana Pharmacy Solutions, Inc.; Defendants Rite Aid Hdqtrs. Corp. and Rite Aid Corporation.

  - o  Not concluded.

Rite Aid reserves the right to amend or supplement this response in the future in accordance with Fed. R. Civ. P. 26(e)(1).

Ruby Decl. Ex. S, Suppl. Rev. ROG Resps. at 20-23.

But now, after a series of meet and confer discussions narrowed the points of conflict, Rite Aid appears to have one remaining objection to identifying governmental investigations in response to this interrogatory: that the term "Litigation" is "vague, ambiguous, and confusing" because it refers to "informal . . . investigations." *Id.* at 5. But of course, this mischaracterizes the definition. The exact definition requests "formal and informal . . . governmental investigations." Ruby Decl. Ex. B, Interrogs. at 3. Plaintiffs informed Rite Aid of its misunderstanding of the definition in a letter sent December 23, 2021. Ruby Decl. Ex. T, 12/23/2021 Ltr. from Mr. Ruby to Mr. Ableson at 8. In the same letter, Plaintiffs identified an exemplary, responsive governmental investigation: the investigation of the Connecticut Attorney General into Rite Aid's RSP (*id.* at 8-9), the very same investigation that was the focus of Rite Aid's briefing to the Sixth Circuit in

30

*Rahimi. Supra* § I.C. Nonetheless, Rite Aid refused to identify this investigation, or any other investigation, on the basis of its purported confusion.[15] *E.g.*, Ruby Decl. Ex. H, 1/14/22 Ableson Ltr. at 5. Rite Aid also appears to claim that identification of such investigations is burdensome and has thus added this basis to its objections. *Id.*

    *First*, Rite Aid's feigned confusion is improper. "[T]he federal rules do not and should not require plaintiffs to use magic words to obtain clearly relevant discovery; the obligation on parties and counsel to come forward with relevant documents requested during discovery is absolute." 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Fed. Prac. & Proc. Civ.* § 2049.1 (3d ed. 1994) (citing *Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692, 709 (D.N.J. 2015)); David F. Herr, Roger S. Haydock, Jeffrey W. Stempel, *Fundamentals of Litigation Practice* § 17:24 (Answering Interrogatories— Reasonable Interpretation) (2021 ed.) ("An attorney must interpret an interrogatory as a reasonable attorney in good faith would read and understand the interrogatory. Unreasonable extrapolations, petty quibbling, and stretched interpretations have no place in determining what information an interrogatory seeks."); *Mead Corp. v. Riverwood Nat. Res. Corp.*, 145 F.R.D. 512, 516 (D. Minn. 1992) ("Interrogatories should be reasonably interpreted in light of both letter and spirit of the discovery rules."). Thus, Rite Aid must interpret the interrogatory in good faith, consistent with the way it is written and must

---

[15] Rite Aid later claimed that the investigation of the Connecticut Attorney General was irrelevant because "it solely concerned claims submitted to Connecticut's fee-for-service program." Ruby Decl. Ex. N, 1/27/2022 Ltr. from Mr. Ableson to Mr. Ruby at 2-3.  As discussed above, Rite Aid's relevance arguments are not only improper on their face, they are flatly contradicted by Rite Aid's own prior statements to the Sixth and Seventh Circuits. *Supra* § I.C.

therefore conduct a search, in good faith, to identify governmental investigations into the RSP.

*Second*, Plaintiffs have also requested that Rite Aid provide documents associated with these investigations, through RFP Nos. 15 and 16, reprinted above. *Supra* § II. Rite Aid has not articulated any specific burden associated with searching for or collecting any documents associated with these investigations. Accordingly, any such objection is waived. *See, e.g.*, Fed. R. Civ. P. 34(b)(2)(B) ("For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons."); Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity."). Regardless, as discussed above, any burden can likely be allayed through the use of technology assisted review, such as appropriate search terms, deduplication, and custodian selection, and it is far outweighed by the by the gravity of this case. Plaintiffs seek $1.8 billion in damages, and these productions are material to Plaintiffs' case. Accordingly, Rite Aid must make a good faith effort to locate and produce documents associated with these governmental investigations as well.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant its Motion to Compel Defendants' Production of Documents.

Dated: February 23, 2022                    Respectfully submitted,


                                            /s/ *Kadee J. Anderson*
                                            Kadee J. Anderson (#0389902)

STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Telephone: (612) 335-1500
Facsimile: (612) 335-1657
kadee.anderson@stinson.com

Kent A. Gardiner (D.C. Bar No. 432081)
Stephen J. McBrady (D.C. Bar No. 978847)
Daniel W. Wolff (D.C. Bar No. 486733)
Kelly Hibbert (D.C. Bar. No. 1006010)
Jay DeSanto (D.C. Bar No. 1026124)
Zach Ruby (D.C. Bar No. 1030640)
CROWELL & MORING LLP
1001 Pennsylvania Ave. NW
Washington, D.C. 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
KGardiner@crowell.com
SMcbrady@crowell.com
DWolff@crowell.com
KHibbert@crowell.com
JDeSanto@crowell.com
ZRuby@crowell.com

*Attorneys for Plaintiffs Blue Cross Blue Shield of North Carolina, et al.*

33