# KUTAKROCK

**Kutak Rock LLP**
60 South Sixth Street, Suite 3400, Minneapolis, MN 55402-4018
office 612.334.5000

**K. Jon Breyer**
612.334.5057
jon.breyer@kutakrock.com

May 3, 2022

The Honorable Hildy Bowbeer
Magistrate Judge of U.S. District Court
United States District Court
316 N. Robert Street
St. Paul, MN 55101

Re:     *Blue Cross and Blue Shield of North Carolina, et. al. v. Rite Aid Corporation and Rite Aid Hdqtrs. Corp.*  Case No. 0:20-cv-01731-ECT/HB

Dear Magistrate Judge Bowbeer,

As instructed, attached please find the hearing transcript and order from proceedings before the Superior Court of the State of Delaware in the case of *Envolve Pharmacy Solutions v. Rite Aid* (N19C-12-214).

Sincerely,
*/s/ K. Jon Breyer*
K. Jon Breyer, Esq.

cc:     All Counsel (via ECF)

4822-3216-4562.1

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

- - - - - - - - - - - - - - :

ENVOLVE PHARMACY              : CA NO.: N16C-12-214
SOLUTIONS, INC., et al                  PRW (CCLD)
                             :

        v.                   :

RITE AID HDQTRS, CORP.,      :
et al
- - - - - - - - - - - - - - :


BEFORE THE HONORABLE PAUL R. WALLACE, J.



                    - - - -

          MONDAY, 11 APRIL 2022
    PLAINTIFFS' MOTION TO COMPEL DEFENDANTS'
           PRODUCTION OF DOCUMENTS

                    - - - -











            LISA J. AMATUCCI, RPR, CSR
       SUPERIOR COURT OFFICIAL REPORTERS
         500 N. King Street - Suite 2609
         Wilmington, Delaware 19801

**APPEARANCES:**


        **MORRIS NICHOLS ARSHT & TUNNELL, L.L.P.**
           1201 North Market Street
              P.O. Box 1374
         Wilmington, Delaware 19899
      **BY: ALEXANDRA M. CUMMINGS, ESQUIRE**

                -and-

           **CROWELL & MORING, L.L.P.**
       1001 Pennsylvania Avenue, NW
         Washington, D.C.  20004
      **BY:  JEROME P. DESANTO, ESQUIRE**
        **DANIEL W. WOLFF, ESQUIRE**
        **KEITH J. HARRISON, ESQUIRE**
        **MICHAEL PINE, ESQUIRE**
          *(Pro Hac Vice)*

         Counsel for the Plaintiff,
      Evolve Pharmacy Solutions, Inc.

              - - - -

        **PRICKETT JONES & ELLIOTT, P.A.**
           1310 King Street
       Wilmington, Delaware 19801
        **BY: JASON RIGBY, ESQUIRE**

             **-and-**

        **SHOOK HARDY & BACON, L.L.P.**
      2001 Market Street - Suite 3000
      Philadelphia, Pennsylvania 19103.
      BY: **THOMAS J. SULLIVAN, ESQUIRE**
         *(Pro Hac Vice)*

         Counsel for the Defendants,
         Rite Aid Hdqtrs Corp.


              - - - -

1                     I N D E X

2              DIRECT  CROSS  REDIRECT  RECROSS

3

4   **PLAINTIFFS' MOTION TO COMPEL DEFENDANTS' PRODUCTION**
    **OF DOCUMENT** - Page 4.

5

6

7                        -  -  -  -

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

```
 1                          Monday, 11 April 2022
 2                          9:00 a.m.
 3                          Zoom via CourtScribes
 4    PRESENT
 5         AS NOTED:
 6              THE COURT:  Counsel, good morning.
 7              This is the time the Court has set
 8    to hear the Motion to Compel that has been
 9    filed in Envolve v. Rite Aid.
10              Would you tell me who is presenting
11    on behalf of each side?
12              Mr. DeSanto, you seem to be breaking
13    up.  Why don't you give it another try.
14              You are just coming in and out.  I
15    don't know what -- you have a bad connection,
16    or something.
17              MR. DESANTO:  Is this better?
18              THE COURT:  That is better.
19              MR. DESANTO:  Maybe I am sitting a
20    little too far from my desk.
21              Is that better?
22              THE COURT:  Much better.
23              MR. DESANTO:  Sorry about that.
```

1        **THE COURT:**  Who is arguing this?

2        **MR. SULLIVAN:**  This is Tom Sullivan

3    from Shook Hardy, and I will present for Rite

4    Aid.

5        **THE COURT:**  Go ahead, Mr. DeSanto,

6    present your motion.

7        **MR. DESANTO:**  Good morning, Your

8    Honor.

9        May it please the Court, my name is

10   Jerome DeSanto.  I am going to be presenting

11   today's Motion to Compel against Rite Aid on

12   behalf of the Plaintiffs.

13       I will be referring to Plaintiffs

14   collectively on this motion as Centene.

15       By way of brief background, Your

16   Honor, this case arises from Rite Aid

17   misreporting of its usual and customary

18   charges on claims submissions for

19   prescription drug claims that it submitted to

20   Centene for reimbursement.

21       Rite Aid misreported its U&C charges

22   under various contracts affecting the

23   Parties' relationship by excluding its RSP

program pricing from its U&C submissions on
prescription drug costs.

        **THE COURT:**  Mr. DeSanto, we can
agree, though, that that U&C definition had a
particular definition applicable to these
agreements; correct?

        **MR. DESANTO:**  So, yes, Your Honor,
we agree that there are numerous contracts at
issue in this case.

        There is the 2003 contract between
Envolve and Rite Aid.  There is the 2013
contract between Envolve and Rite Aid.  Those
contracts underlie Envolve's breach of
contract claim against Rite Aid.

        There are also numerous contracts
with third-party PBMs, Caremark and Argus,
which --

        **THE COURT:**  Mr. DeSanto, that is not
the question I asked you at all.

        Is there one unified definition of
U&C for the purposes of this litigation and
these contracts?

        **MR. DESANTO:**  We think that the

definition of U&C across all contracts that are at issue in this case are consistent, and that they are clear, and that they require Rite Aid to include in its calculation of U&C its program pricing.

Our position with respect to -- so there are two discovery requests that are at issue, general discovery requests that are at issue, on this Motion to Compel.

The third is what I will refer to as the State Medicaid discovery.  And the State Medicaid discovery, what we are seeking here are communications and documents relating to Rite Aid's reporting of its usual and customary charge to State Medicaid agencies; relevant extrinsic evidence as to what the contracts at issue mean when they define the term U&C in the event a court determines a need to go outside the four corners of the agreement at issue to determine what U&C means.

Again, our position is that --

**THE COURT:**  And this gets me back to

1    my first question, that the Court is going to

2    have to go outside of contractual language

3    here.

4         **MR. DESANTO:**   Our position is that

5    the contracts are clear and consistent, and

6    that Rite Aid violated their terms.

7         However, Rite Aid has indicated

8    through its own actions in discovery the need

9    that it may need to consider extrinsic

10   evidence because we are not quite sure what

11   position Rite Aid is going to take in this

12   case with respect to the contracts, if they

13   are clear or not, and what its position with

14   respect to contractual meaning is.

15        And because we can't predict at this

16   point whether or not the Court is going to

17   need to go outside the four corners, or if

18   Rite Aid is going to press the Court in going

19   outside the four corners of the contracts,

20   both Parties at this point in time are

21   engaged in the process of collecting

22   extrinsic evidence as to the contractual

23   meaning.

1        Rite Aid has been doing this.  It

2    has taken the position in other litigations

3    that an industry meaning of U&C defaults to

4    exclusion of RSP pricing.

5        It has it has indicated a position

6    in this case that it may take that the

7    industry standard of U&C, that there is no

8    uniform understanding of U&C.

9        But what Rite Aid has been doing in

10   discovery, as is Centene, is it has engaged

11   in taking discovery of extrinsic evidence.

12   Rite Aid has sought -- specifically industry

13   standard evidence, or trade usage evidence.

14       Rite Aid has sought industry

15   standard evidence of least seven third

16   parties, including other pharmacies and PBMs,

17   about their respective understandings of U&C

18   and program pricing.

19       It is industry standard evidence

20   from Centene seeking from Centene its own

21   agreements and communications with other

22   pharmacies about U&C pricing.

23       And even discovery has sought from

1    Centene -- and this is an important one --

2    industry standard evidence from Centene by

3    seeking from Centene Centene's own

4    communications with government entities about

5    U&C pricing.

6            So, really, I think the point here

7    today, Your Honor, is both Parties are

8    engaged in building up their own respective

9    pots of extrinsic evidence and industry

10   standard evidence in the event the Court

11   needs to go outside the four corners of the

12   agreements in resolving this case.

13           Rite Aid has been doing it.

14           And, so, we think that the State

15   Medicaid discovery issued in its first

16   discovery request is relevant evidence of how

17   the industry understands U&C.

18           U&C functions in the same way for

19   state Medicaid fee-for-service as it does for

20   commercial payers, Medicare Part E

21   contractors.

22           The requirements, there are many

23   state Medicaid regulations near or

1    substantially similar to the U&C requirements

2    in private contracts between pharmacies,

3    PBMs.

4         And there is the Seventh Circuit in

5    the seminal case *Garbe* recognized the

6    substantial similarities between Medicaid

7    regulations on U&C, private contracts on U&C,

8    and Federal regulations on U&C.

9         Our amended complaint shows the

10   substantial similarities between Medicaid

11   relations on U&C, the private contracts on

12   U&C, and the Federal regulations on U&C.

13        Rite Aid, in its brief, in its

14   amicus brief, in the *Garbe* case made an

15   argument about industry understanding of U&C

16   in that case.  And it actually cited -- and

17   we include that as Exhibit A to our Motion to

18   Compel -- they state to state Medicaid

19   regulations in their industry standard

20   argument with respect to U&C.

21        And, again, just to highlight, Rite

22   Aid, in all of the discovery requests, is

23   seeking from Centene Centene's own

1    communications, relevant entities, relating

2    to U&C pricing.

3             So in short on this first discovery

4    request, there is nothing materially

5    different about Medicaid discovery that

6    should take it outside the relevant industry

7    standard evidence that the Parties have been

8    taking from another.

9             And if Rite Aid is getting to take

10   its own industry standard discovery, Centene

11   should be able to do the same.  And the state

12   Medicaid discovery is relevant evidence of

13   how the industry understands U&C.

14            **THE COURT:**  As to this specific area

15   but all of them, how do you answer your

16   friend's overbreadth problem that you are

17   asking for any and all; basically for

18   everything?

19            **MR. DESANTO:**  So we don't know what

20   we don't know.

21            We don't know what communications

22   Rite Aid has had with certain state Medicaid

23   agencies.

1          We do know about our communications

2     with at least the State of Connecticut's

3     Medicaid agency.  That was next referenced in

4     Rite Aid's amicus brief in the *Garbe* case.

5          We do know that Rite Aid has had

6     communications with the State of Oregon state

7     Medicaid agency about reporting U&C.  That is

8     another one that is mentioned in Rite Aid's

9     amicus brief in the *Garbe* case.

10          **THE COURT:**  Okay.

11          **MR. DESANTO:**  Moving on then, we

12     also think state Medicaid evidence, briefly,

13     Your Honor, is relevant to the statute of

14     limitations issue that Rite Aid has put at

15     issue in this case.

16          Rite Aid has argued statute of

17     limitations.  Centene has argued in response

18     to that argument the tolling doctrine of

19     fraud and concealment.

20          Again, based on Rite Aid's *Garbe*

21     brief, upon information and belief,

22     Connecticut state Medicaid called Rite Aid

23     out for U&C reporting practices in 2010.

1           Upon further information and belief,

2     Oregon State Medicaid called Rite Aid out in

3     2011 for its reporting in U&C.

4           Despite having notice from each

5     state Medicaid agency that what Rite Aid was

6     doing was possibly improper with respect to

7     its reporting of U&C, Rite Aid continued hide

8     from the rest of the industry, Centene

9     included, its U&C reporting practices.  And

10    we think this cuts right to the question of

11    whether Rite Aid, quote, knew about the

12    wrongfulness of its actions, an element of

13    the fraudulent concealment doctrine that this

14    Court noted in its motion to dismiss opinion.

15          The State Medicaid discovery is,

16    therefore, we think, relevant to the statute

17    of limitations issue.  We think it cuts to

18    whether they had notice of the alleged

19    wrongfulness of its actions.  And that is

20    relevant to the statute of limitations

21    argument that is going to be had in this

22    case.

23          So Rite Aid mentions in its brief

1    that it might be disproportionate to

2    producing this evidence to the needs of the

3    case.  We don't think so.  This is a $200

4    million case.  We don't think a custodian or

5    two to pull these documents would be overly

6    burdensome.

7          Rite Aid also raises issue of that

8    some of these documents may be privileged.

9    We think that is a red herring, and it is not

10    an excuse to withhold this category of

11    documents.  This wholesale communications

12    with state Medicaid entities, by their very

13    nature, would not be privileged as it would

14    be involving third parties sufficient to

15    break the attorney-client privilege.

16          So unless the Court has questions

17    about this first discovery request, state

18    Medicaid discovery, I am happy to move on to

19    our second request.

20    **THE COURT:**  That is fine, move on.

21    **MR. DESANTO:**  So the second request

22    is the other litigation's discovery.  I will

23    as refer to it as that.

1          So our brief identifies three

2     litigations, the *Rahimi* case, the *Stafford*

3     case, and *Humana* case as other litigations

4     with substantially similar allegations to

5     Rite Aid's misreporting of its usual

6     customary charge.  They all center upon that

7     core issue.

8          And our focus here on this second

9     discovery request, this other litigation's

10     discovery, is on the transcripts; deposition

11     transcripts from current and former Rite Aid

12     employees, witness testimony transcripts,

13     sworn statements from current or former Rite

14     Aid employees, and interrogatory responses

15     from Rite Aid.

16          We think that these transcripts

17     would be highly relevant here.

18          We understand that former or current

19     Rite Aid employees or executives gave

20     testimony in these cases of U&C pricing,

21     about its program, how it operated;

22     essentially about the very issues that cut to

23     the heart of this case.  And that these

1   transcripts are, again, relevant, and they

2   would also cut to the need for us to gather

3   this information to either corroborate

4   witness testimony, or to impeach it; that

5   there is obvious deficiencies here with

6   respect to the transcripts.

7   　　　　　If we were to gain access to them,

8   we could begin to truncate the length of

9   depositions, the need to go over certain

10  topics in deposition.  We could narrow the

11  issues for deposition; or, perhaps, in some

12  cases, eliminate the need for certain

13  depositions.

14  　　　　　So our focus here on this is really

15  with respect to the transcripts, and the

16  interrogatory responses that Rite Aid

17  employees, former employees, gave in these

18  other matters.

19  　　　　　The second part of this other

20  litigation's discovery are the document

21  production sets that Rite Aid produced in

22  these other matters.

23  　　　　　Again, the issue across the cases is

1      essentially the same; it is was Rite Aid

2      required to report its program pricing in its

3      U&C submissions.

4              Our position here is that, look,

5      mistakes sometimes get made in submissions.

6      This is a belt and suspenders approach. We

7      want to make sure we are getting all of the

8      relevant documents that Rite Aid has or had

9      about U&C pricing, and program pricing.  We

10     think it should be pretty efficient; not much

11     burden for Rite Aid to just reproduce these

12     production sets.

13             However, if Rite Aid does not want

14     to, or remains unwilling to produce its

15     production sets from these other litigations,

16     as a comprise we would be willing to accept a

17     commitment by Rite Aid to take those

18     production sets, apply the Parties' agreed

19     upon search terms, review those production

20     sets for responsiveness in this case, and go

21     about producing the documents that way.

22             That is something that Rite Aid has

23     not committed to yet in this case, but as a

1    compromise with respect to this, the

2    documents in the other litigation's

3    discovery, we would be willing to accept

4    that, as well.

5              So unless the Court has further

6    questions, we respectfully request that the

7    Court compel production of the two discovery

8    requests at issue on this motion.  And I will

9    reserve whatever time I have remaining for

10   rebuttal.

11             **THE COURT:**  We have already gone

12   over your time, but that is fine.

13             **MR. DESANTO:**  Okay.

14             **THE COURT:**  I will hear from the

15   other side.

16             **MR. SULLIVAN:**  Your Honor, Tom

17   Sullivan for Rite Aid.  May it please the

18   Court.

19             I want to focus in on one thing

20   counsel said in his argument because I

21   believe it really goes to the heart of the

22   issue with regard to the Medicaid

23   fee-for-service request.  That is, they said

1    that Medicaid fee-for-service functions in

2    the same way as the agreements here.  That is

3    not the case.  It is not accurate.

4              Medicaid fee-for-service is a

5    creature of state statute, of state

6    regulation, and of the guidance at the state

7    level.  It is not a creature of contract.

8              The issues here are dictated by

9    contract.

10             This is a commercial case, a

11   commercial contract case, between Rite Aid

12   and Centene.  There is no state statute, or

13   state regulation.  And that is important,

14   because I think that it dovetails with

15   another point that counsel made.

16             They said that they need this

17   evidence for purposes potentially of

18   interpreting the contracts.  Well, I was

19   surprised to hear that because there really

20   is no mention of that in their brief.

21             Their brief, their motion, does not

22   connect up in any way how it is that any one

23   of these State's statutes that govern the

1   fee-for-service area could be used as

2   interpretive guidance for any one of the

3   definitions that are in the agreements that

4   are at issue in this case.  So that makes it

5   --

6          **THE COURT:**  What about your friend's

7   suggestion that basically how you interact

8   with these agencies, though, no matter what

9   the statute says, and if somebody claims

10   there is some ambiguity in this, may go to

11   how do you, in the marketplace, determine

12   U&C.

13          **MR. SULLIVAN:**  Your Honor, every one

14   of those state statutes and regulations is --

15   they are individualized.  I haven't compared

16   them to the particular agreements at issue.

17          And if their position is that those

18   state statues and regulations can be used as

19   a guide, that is exactly what they would need

20   to do.

21          The agreements at issue here --

22          **THE COURT:**  No, I am not saying

23   that -- and I don't believe that is what I

1   heard -- not that those statutes are the

2   guide, but your client's interaction with

3   those agencies, how you determine U&C there.

4   And maybe specifically in the guides it says

5   discount programs don't play a factor.  Maybe

6   they do; maybe the State regulations are

7   different.

8            But if someone says U&C is

9   determined basically by how we deal with the

10  market, and it goes across both private

11  insurers, state insurers, Federal insurers,

12  and overall you don't use discount programs

13  as part of that, are you willing to commit

14  right here that there is no ambiguity in this

15  statute, and it is going to be a straight

16  look at the wording of the statute.

17            MR. SULLIVAN:  Your Honor, I would

18  say --

19            THE COURT:  Not the wording of the

20  statute, I apologize; the wording of the

21  contracts.

22            MR. SULLIVAN:  Your Honor, I would

23  say that the -- for one thing, the state

1    Medicaid fee-for-service is a whole different

2    market.

3            The term "U&C," the phrase "U&C," is

4    certainly used there, there is no question.

5    But that market -- I mean, for example, it is

6    its own market within Rite Aid.

7            Those terms are set at the political

8    level by state legislatures, by the

9    regulators.

10           I know that there are variations

11   between those, I know that they differ among

12   them.  I don't know all of the history behind

13   each one of those for sure, but those

14   negotiations are clearly different, and have

15   clearly a different history, and a different

16   context, and a different background than any

17   definitions at issue in this case, even if

18   there is the need for extrinsic evidence.

19           And I don't know that right now.

20   That was not an issue.  It was teed up in the

21   motion, frankly.  They talked about notice,

22   they talked about fraudulent concealment, and

23   statute of limitations.

1          And, frankly, a lot of the -- they
2     talked -- Mr. DeSanto mentioned the discovery
3     we were doing of third parties.  There is a
4     lot of discovery of third parties, Your
5     Honor, precisely because we believe there is
6     wide industry knowledge about how these
7     programs worked.  That is certainly a
8     critical reason for the discovery that has
9     been at issue.  And we believe it is
10    compelling, because it shows that Centene, in
11    our view, certainly would have known, or
12    should have known.
13          So, Your Honor, the issue with the
14    Medicaid fee-for-service is it really is a --
15    it is a completely different bucket.  And not
16    only is it irrelevant, but it, therefore,
17    also imposes a significant burden if we would
18    have to go collect for that, if we would have
19    to produce all of that.
20          There has been a significant amount
21    of discovery already in this case.
22          Numerous custodians were produced.
23    We have reviewed hundreds of thousands of

1    documents; produced over, I think, 25,000

2    documents to date.  This would add on -- for

3    an issue that is not even relevant -- would

4    add on an incredible amount of burden, and is

5    disproportional to the needs of this case,

6    which is really about resolving a

7    disagreement about a contract between these

8    Parties; not anything to do with Medicaid

9    fee-for-service.

10              And, in fact, unless I have missed

11   it, the Medicaid fee-for-service business is

12   not even at -- not even one of the

13   Plaintiffs' businesses who are parties in

14   this case.

15              They are not saying that Medicaid

16   fee-for-service is -- that they are engaged

17   in that by one of these Plaintiff parties.

18              So it is a combination of relevance

19   and proportionality and burden, really.  It

20   adds nothing to resolving the claims or

21   defenses here, in our view, and imposes a

22   significant burden.

23              **THE COURT:**  Your friend talked more

1          about the state programs.

2                    What about the FEP program, where

3          they say the matter in which U&C is

4          determined for that was more similar, or use

5          contractual language that was similar here.

6                    **MR. SULLIVAN:**  Your Honor, I believe

7          in that instance that is -- I think what they

8          are referring to, or the reference there was

9          to an issue, a historical issue, that related

10         to the role of Caremark in a contract for

11         processing claims on behalf of FEP.  That is

12         a private agreement.  That is not a Medicaid

13         fee for-service-issue.

14                    That, as I understand the issue, is

15         really about communications with Caremark,

16         which is a third party, that is clearly

17         distinct from a Medicaid fee-for-service, or

18         a state agency.

19                    I don't know -- unless I have missed

20         it, I don't think that that is squarely an

21         issue in their Motion to Compel here.  I

22         think it was an issue that was raised in the

23         amicus brief that they referred to that they

believe supports their position here.

Frankly, we believe they
mischaracterize the position we took in
*Garbe*.

The point of *Garbe* was simply to
point out that U&C is a concept that is at
issue in two different spaces, in two
different areas;

One is in the area of private
contract, and one is in the State Medicaid
fee-for-service agreement.

And it is noteworthy, too -- and we
make this point in our brief, Your Honor --
that even *Garbe* noted the variation between
state regulations in its opinion, and noted
that the State regulations and those state
statutes are sometimes exceptions to a
definition of U&C.

Your Honor, one quick point on the
notice issue.

They suggest that the Medicaid
fee-for-service inquiries, to the extent
there are some, would put us on notice that

1    what we were doing was wrong.  I don't think
2    that really would be evidence of notice in
3    the first instance.  And, secondly, all of
4    those inquiries, or any of those inquiries,
5    really relate to that state's particular
6    understanding of their own statute, of their
7    own regulations, and not any agreement that
8    is at issue between these parties.
9         So I think that distinction in terms
10   of how Medicaid's fee-for-service works
11   really is dispositive of the issue here.  It
12   is not based on a contract, it is not based
13   on a private negotiation, and has a far
14   different history.
15        I will address, Your Honor, as
16   well -- unless Your Honor has more questions
17   on the Medicaid fee-for-service issue --
18   address the issue of so-called other
19   litigation requests.
20        First, they mention three cases:
21   *Rahimi*, *Stafford*, *and Humana*.
22        Your Honor, *Stafford* is a consumer
23   case.  It involves different issues than the

1        issues at play here, which are, again,

2        between the insurer and the pharmacy, and

3        don't have to do with the consumer.

4                And then *Rahimi* and *Humana* also

5        dealt with different issues, different

6        contracts, have different protective orders,

7        from my understanding.  And the issues

8        testified to in those cases would be

9        specific, I believe, to the issues in those

10       litigations.  And they are, obviously,

11       governed by protective orders in those

12       different litigations.

13               They mention the need for

14       efficiency, and they think that if they have

15       those transcripts, that it would make

16       discovery more efficient in this case; yet,

17       they have requested the same custodians,

18       identified the same potential witnesses,

19       haven't articulated in any way how things

20       would be more efficient.

21               They are trying to basically -- and

22       they acknowledged it on the next issue --

23       trying to basically get every scrap of paper

1    through a belts and suspenders approach that

2    they possibly can, ignoring the burden and

3    proportionality concerns that are part of the

4    Delaware rules, and part of the

5    considerations that relate to this motion.

6              **THE COURT:**  But as to these two, if

7    I recall correctly, and I am just looking, we

8    are talking about three cases, we are talking

9    about specifics of discovery and depositions

10   that were taken in those cases, and only

11   those portions that would relate to the U&C

12   and how it is developed.  Right?

13             **MR. SULLIVAN:**  Your Honor, I

14   don't -- I didn't hear that limitation in

15   counsel's argument, and I can't make a

16   representation about what is in those

17   transcripts precisely.  I know these

18   litigations did relate to U&C. U&C was at the

19   heart of the issues.  I can't tell you what

20   particular testimony there was about those

21   things there.

22             And, clearly, I think counsel would

23   have to acknowledge, the contracts are

1    different, the relationships are different,

2    the parties are different, the histories of

3    the negotiations are different.  All of that

4    is different.  All of that is not the same

5    here.

6             **THE COURT:**  Okay.

7             **MR. SULLIVAN:**  In terms of document

8    production, Your Honor, I think a little bit

9    of context is important, because this really

10   is another burden issue.

11            We have, as counsel knows, collected

12   a large number of documents.  We believe that

13   that collection includes the same documents

14   that would have been collected -- that were

15   collected in those other litigations.

16            And the documents here that have

17   been collected have been reviewed for

18   responsiveness, and privilege, and whatnot,

19   and had been produced -- are being produced

20   in this litigation.

21            The documents in those other

22   litigations are responsive to those requests

23   in those cases.  And what counsel has asked

us to do is to take those productions and
essentially -- and we would have to bear this
burden -- re-reviewing them for purposes of
this case, when we believe that the documents
collected in those other litigations are
essentially from the same universe of the
documents collected here.

So it is basically forcing us -- it
would force us to the expense of reviewing
things that we have already reviewed before,
as we understand it.

And they acknowledge that this is a
belts and suspenders approach.  But that
belts and suspenders approach, again, is not
sensitive to the costs.

Frankly, Your Honor, the amount that
we have spent reviewing documents here could
buy us a very nice house.  I mean, this is an
extraordinary amount of money that has been
spent reviewing documents, and belt and
suspenders is not the standard imposed on a
producing party, on a reviewing party.  Not
to mention the fact, Your Honor, that all of

those documents, they are subject to
different protective orders, they relate to
different agreements.

The consumer case may involve
sensitive HIPAA information that we do have a
protective order here, but it is different,
as we understand it.  And that is why, as
well, Your Honor, those documents would need
to be re-reviewed, to some extent.  And that
is a meaningful expense, as you know.

Your Honor, unless you have further
questions, I think you have a sense of our
position, at this point.

**THE COURT:**  Thank you.

Mr. DeSanto.

**MR. DESANTO:**  Thank you, Your Honor.

Very briefly.

One, I just wanted to point out that
Centene is the largest Medicaid managed care
payer in the country, and that U&C, at least
in terms of how U&C functions as a ceiling
for reimbursement, functions similarly
substantially the same way as it does for

1        Medicaid fee-for-service.

2                Number Two, Rite Aid has treated

3        Medicaid fee-for-service, state Medicaid

4        agencies in the industry the same way as it

5        has treated insurance companies with respect

6        to its reporting practices of U&C.

7                It treated FEP payers the same way,

8        it treated private insurance companies the

9        same way, it treated state Medicaid payers

10       the same way with respect to its reporting

11       practices, unless and until it was called out

12       by certain of those Medicaid agencies.

13               So Rite Aid itself really didn't

14       recognize a difference when it came to its

15       reporting practices.

16               And the last thing I want to

17       mention, Your Honor, is with respect to,

18       again, our focus is on the transcripts of

19       current and former Rite Aid employees in

20       these other matters do not invoke a

21       protective order issued from those other

22       cases.

23               Rite Aid would not need to seek the

1    permission to produce its testimony in those

2    other matters in this case.

3              And Rite Aid, in how it opposed the

4    motion here, shows some efficiencies that can

5    be used with permitting production of these

6    transcripts from other cases.

7              Rite Aid itself cited a transcript

8    from another case, and appended it as an

9    exhibit to its opposition brief with respect

10   to this motion.

11             And, so, we think that production of

12   these transcripts from current/former Rite

13   Aid employees are not only relevant, but

14   would make it more streamlined for purposes

15   of this litigation.

16             **MR. SULLIVAN:**  Your Honor, if I may

17   respond just briefly.

18             **THE COURT:**  Sure.

19             **MR. SULLIVAN:**  Medicaid managed care

20   is not Medicaid fee-for-service.  It's not.

21   It is a different business line.

22             It is not governed by statute.

23   Medicaid managed care is governed by

1      contract.

2              Second, Counsel says this evidence

3      would show that we treated everybody the same

4      way.  Well, what matters here again, Your

5      Honor, is the contract, and that contract is

6      different than the State statute.  And, now,

7      that response suggests that they don't really

8      need it for interpretive purposes; that they

9      are trying to use it for something else, and

10     it is not really clear what that is.

11             Finally, as to the transcripts, Your

12     Honor, I don't know -- I can't represent

13     exactly what is in those transcripts.  But

14     those cases involve different arrangements,

15     involve different agreements, and it is

16     certainly possible, and I believe it is

17     likely, that the testimony, to the extent

18     those involve different business

19     relationships, would, at least to some

20     extent, fall under the POs in those cases.

21     So that is certainly an additional burden on

22     top of the relevance issues.

23             **THE COURT:**  Well, have you looked at

those agreements to see whether or not they
used the same definitions?

        **MR. SULLIVAN:**  I have not seen the
*Humana* agreements, Your Honor.

        Those agreements are typically
protected under the protective order in those
cases.

        **THE COURT:**  I have heard from both
of you.  We have taken 40 minutes on a
discovery motion.  I am ready to rule on the
motion itself.

        Superior Court Civil Rule 26(b)(1)
does provide that parties may obtain
discovery regarding any non-privileged matter
that is relevant to any party's claim or
defense, and proportional to the needs of the
case.

        As a general rule, the information
sought in discovery is relevant if there is
any possibility that the information sought
may be relevant to the subject matter of the
action before the court.

        When challenged, there are certain

1       burdens that the plaintiffs have to

2       demonstrate to the court that it is relevant,

3       and that it is over burdensome.  Actually,

4       both parties carry certain burdens there, but

5       I think I have heard enough to know where

6       those lie.

7                This is a matter that is governed

8       specifically by contract language, neither

9       party of which has been fully willing to

10      settle on being unambiguous, but also neither

11      of which, given the sophistication of the two

12      parties, the Court should believe has some

13      strong argument for ambiguity.

14               I do note the difference between the

15      types of payment systems here that are

16      involved between the State Medicaid agencies

17      and how those may be determined, and third

18      parties, such as we are talking about, or

19      other parties, such as we are talking about

20      here.

21               What the Court is going to do is

22      this:

23               At this point, I just do not see a

1    significant showing of relevance as to the

2    requests under basically the government

3    agency, the State Medicaid agencies.  So that

4    would be Number 6, and Number 11, and if I

5    remember correctly, Number 10.

6              As to 27, I find two things.  One, I

7    don't see that there is a threshold of

8    relevance there.

9              Those agreements, or the work done

10   with those state agencies, are done pursuant

11   to statutes and regulations, and there has

12   simply not been enough presented to the Court

13   to believe that the statutory regulatory

14   language is similar to the agreements that

15   are set forth here, such that it would give

16   any assistance in determining what

17   interpretive meaning of the U&C here.  Again,

18   note, neither party has truly argued that

19   there is ambiguity in this contractual

20   language, and I just don't see that there has

21   been enough to tell me that it will be

22   needed, at this point.

23              On the other hand, I do believe that

1    Rite Aid has shown that there will be

2    substantial burden in trying to go through

3    all of that.

4              Using those two factors, the Court

5    finds that as to 6, 10, and 11 -- I apologize

6    if I don't have the numbers quite right here,

7    but let me make sure.

8              Six, 10 and 11, the motion is

9    denied.

10              As to 26, The Court is granting that

11   motion as to production limited to the

12   *Rahimi*, *Stafford*, and the *Humana* matters.

13              Any documents will be limited using

14   the search terms already agreed upon within

15   those discovery materials, and is ordering

16   the transcripts of former and present Rite

17   Aid employees, specifically as to methods and

18   factors used by Rite Aid to determine the

19   U&C.

20              As to 27, I find that that is,

21   again, overly burdensome and really not very

22   focused; whereas, 26 I find is a bit more

23   focused, and especially when we limit it to

1    these three litigations, or arbitrations,

2    that were identified.

3              This production shall be made on or

4    before May 2nd of 2022.

5              The Parties may extend this period

6    of my stipulation after a meet and confer

7    regarding the production, because I know that

8    there has been some discussion before.

9              I will file this Order, which is

10   basically a marked up Order, some time this

11   morning.

12             **MR. SULLIVAN:**  Your Honor, may I ask

13   one conceptual point of clarification; I do

14   believe it is potentially important.

15             My understanding -- and it is not a

16   full understanding because I was not involved

17   in the case -- is that *Rahimi* is an FCA case,

18   I believe, and may -- the essential question

19   is, to the extent that there are Medicaid

20   fee-for-service issues in any of those cases

21   that I am not aware of sitting here right

22   now, or the particularities of it, I would

23   assume that those would not be relevant, and

1     would not need to be produced pursuant to the

2     same ruling that covered 6, 10 and 11.

3            It is a conceptual issue.  We are

4     happy to raise it in a meet and confer, if

5     necessary, and tee that up more clearly.  But

6     I don't have full visibility into the

7     particularities of what was raised in each

8     one of those cases.

9            **THE COURT:**  Well, Mr. Sullivan, at

10    this point, because I am talking about just

11    three particular litigations, I have narrowed

12    the scope of the potential that is out there.

13           To the extent it may that those

14    litigations may have crossed into that area,

15    I am going to deem that they are relevant for

16    now.

17           But you can meet and confer on it,

18    and if there needs to be some clarification

19    after it is reviewed, I will deal with it

20    then.

21           I will tell you that I will lean

22    towards, I have narrowed the scope of it so

23    greatly that a bit of overlap into other

1      state Medicaid programs that may have been

2      brought up in that litigation.  This is $200

3      million case.  That bit of overlap, or that

4      bit of excess there, is not bothersome to the

5      Court, and may be, in some way, relevant

6      because it is the overall theme of the

7      litigation taken there.  Okay?

8                  **MR. SULLIVAN:**  Thank you, Your

9      Honor.

10                 **THE COURT:**  All right.

11                 **MR. DESANTO:**  Thank you, Your Honor.

12                 (Time noted: 9:49 a.m.)

13                      - - - -

14

15

16

17

18

19

20

21

22

23

1        CERTIFICATE OF COURT STENOGRAPHER

2            *I, Lisa J. Amatucci, RPR, CSR, Official*

3    *Court Stenographer of the Superior Court, State of*

4    *Delaware, do hereby certify that the foregoing is*

5    *an accurate transcript of the proceedings had, as*

6    *stenographically reported by me, in the Superior*

7    *Court of the State of Delaware, in and for New*

8    *Castle County, in the case herein stated, as the*

9    *same remains of record in the Office of the*

10   *Prothonotary at Wilmington, Delaware, and that I am*

11   *neither counsel nor kin to any party or participant*

12   *in said action, nor interested in the outcome*

13   *thereof.  This certification shall be considered*

14   *null and void, and the transcript will be*

15   *uncertified, if the transcript is disassembled*

16   *and/or copied and/or distributed and/or shared in*

17   *any manner by any party without authorization of*

18   *the signatory below.*

19           *WITNESS my hand this Twenty-Sixth Day of*

20   *April 2022.*

21

22                    /s/ Lisa J. Amatucci, RPR, CSR

                      *Lisa J. Amatucci, RPR, CSR*

23                    *Official Court Stenographer*

**MR. DESANTO: [13]**
4/16 4/18 4/22 5/6 6/6
6/22 8/3 12/18 13/10
15/20 19/12 33/15 43/10

**MR. SULLIVAN: [13]**
5/1 19/15 21/12 22/16
22/21 26/5 30/12 31/6
35/15 35/18 37/2 41/11
43/7

**THE COURT: [25]** 4/5
4/17 4/21 4/23 5/4 6/2
6/17 7/22 12/13 13/9
15/19 19/10 19/13 21/5
21/21 22/18 25/22 30/5
31/5 33/13 35/17 36/22
37/7 42/8 43/9

**$**

**$200 [2]** 15/3 43/2

**-**

**-and [2]** 2/6 2/16

**/**

**/S/Lisa [1]** 44/22

**1**

**10 [4]** 39/5 40/5 40/8
42/2
**1001 [1]** 2/7
**11 [6]** 1/13 4/1 39/4
40/5 40/8 42/2
**1201 [1]** 2/3
**1310 [1]** 2/14
**1374 [1]** 2/4
**19103 [1]** 2/19
**19801 [2]** 1/22 2/15
**19899 [1]** 2/4

**2**

**20004 [1]** 2/8
**2001 [1]** 2/18
**2003 [1]** 6/10
**2010 [1]** 13/23
**2011 [1]** 14/3
**2013 [1]** 6/11
**2022 [4]** 1/13 4/1 41/4
44/20
**214 [1]** 1/4
**25,000 [1]** 25/1
**26 [3]** 37/12 40/10 40/22
**2609 [1]** 1/22
**27 [2]** 39/6 40/20
**2nd [1]** 41/4

**3**

**3000 [1]** 2/18

**4**

**40 [1]** 37/9

**5**

**500 [1]** 1/22

**9**

**9:00 [1]** 4/2
**9:49 [1]** 43/12

**A**

**a.m [2]** 4/2 43/12
**able [1]** 12/11
**about [30]** 4/23 9/17
9/22 10/4 11/15 12/5
13/1 13/7 14/11 15/17
16/21 16/22 18/9 18/21
21/6 23/21 23/22 24/6
25/6 25/7 26/1 26/2
26/15 30/8 30/9 30/16
30/20 38/18 38/19 42/10
**accept [2]** 18/16 19/3
**access [1]** 17/7
**accurate [2]** 20/3 44/5
**acknowledge [2]** 30/23
32/12
**acknowledged [1]**
29/22
**across [3]** 7/1 17/23
22/10
**action [2]** 37/22 44/12
**actions [3]** 8/8 14/12
14/19
**actually [2]** 11/16 38/3
**add [2]** 25/2 25/4
**additional [1]** 36/21
**address [2]** 28/15 28/18
**adds [1]** 25/20
**adds nothing [1]** 25/20
**affecting [1]** 5/22
**after [2]** 41/6 42/19
**again [11]** 7/22 11/21
13/20 17/1 17/23 29/1
32/14 34/18 36/4 39/17
40/21
**against [2]** 5/11 6/14
**agencies [9]** 7/15 12/23
21/8 22/3 34/4 34/12
38/16 39/3 39/10
**agency [5]** 13/3 13/7
14/5 26/18 39/3
**agree [2]** 6/4 6/8
**agreed [2]** 18/18 40/14
**agreement [4]** 7/20
26/12 27/11 28/7
**agreements [14]** 6/6
9/21 10/12 20/2 21/3
21/16 21/21 33/3 36/15
37/1 37/4 37/5 39/9
39/14
**ahead [1]** 5/5
**AID [59]**
**Aid's [5]** 7/14 13/4 13/8
13/20 16/5
**al [2]** 1/4 1/7
**ALEXANDRA [1]** 2/5
**all [15]** 6/19 7/1 11/22
12/15 12/17 16/6 18/7
23/12 24/19 28/3 31/3
31/4 32/23 40/3 43/10
**allegations [1]** 16/4
**alleged [1]** 14/18
**already [4]** 19/11 24/21
32/10 40/14
**also [7]** 6/15 13/12 15/7
17/2 24/17 29/4 38/10
**am [10]** 4/9 15/10 15/18
21/22 30/7 37/10 41/21

**AMATUCCI [4]** 1/21
44/2 44/22 44/22
**ambiguity [4]** 21/10
22/14 38/13 39/19
**amended [1]** 11/9
**amicus [4]** 11/14 13/4
13/9 26/23
**among [1]** 23/11
**amount [4]** 24/20 25/4
32/16 32/19
**and/or [3]** 44/16 44/16
44/16
**another [6]** 4/13 12/8
13/8 20/15 31/10 35/20
**answer [1]** 12/15
**any [11]** 12/17 20/22
20/22 21/2 23/16 28/4
28/7 29/19 37/14 37/15
37/20 39/16 40/13 41/20
44/11 44/17 44/17
**anything [1]** 25/8
**apologize [2]** 22/20
40/5
**APPEARANCES [1]** 2/1
**appended [1]** 35/8
**applicable [1]** 6/5
**apply [1]** 18/18
**approach [4]** 18/6 30/1
32/13 32/14
**APRIL [1]** 1/13 4/1
44/20
**arbitrations [1]** 41/1
**are [63]**
**are trying [1]** 29/21
**area [4]** 12/14 21/1 27/9
42/14
**areas [1]** 27/8
**argued [3]** 13/16 13/17
39/18
**arguing [1]** 5/1
**argument [7]** 11/15
11/20 13/18 14/21 19/20
30/15 38/13
**Argus [1]** 6/16
**arises [1]** 5/16
**arrangements [1]** 36/14
**ARSHT [1]** 2/3
**articulated [1]** 29/19
**as [45]**
**ask [1]** 41/12
**asked [2]** 6/19 31/23
**asking [1]** 12/17
**assistance [1]** 39/16
**assume [1]** 41/23
**attorney [1]** 15/15
**attorney-client [1]**
15/15
**authorization [1]** 44/17
**Avenue [1]** 2/7
**aware [1]** 41/21

**B**

**back [1]** 7/23
**background [2]** 5/15
16/2
**BACON [1]** 2/18
**bad [1]** 4/15
**based [1]** 13/20 28/12

**basically [8]** 19/1 22/17 21/7 22/2
22/9 29/21 29/23 32/8
39/2 41/10
**be [35]** 4/12 5/10 5/13
12/11 14/21 15/1 15/5
15/8 15/13 15/14 16/17
18/10 18/16 19/3 21/1
21/18 22/15 28/2 29/8
29/20 33/9 35/5 37/21
38/17 39/4 39/21 40/1
40/13 41/3 41/23 42/1
42/18 43/5 44/13 44/14
**bear [1]** 32/2
**because [12]** 8/10 8/15
19/20 20/14 20/19 24/5
24/10 31/9 41/7 41/16
42/10 43/6
**been [17]** 4/8 9/1 9/9
10/13 12/7 24/9 24/20
31/14 31/17 31/17 31/19
32/19 38/9 39/12 39/21
41/8 43/1
**before [5]** 1/9 32/10
37/22 41/4 41/8
**begin [1]** 17/8
**behalf [3]** 4/11 5/12
26/11
**behind [1]** 23/12
**being [2]** 31/19 38/10
**belief [2]** 13/21 14/1
**believe [16]** 19/21
21/23 24/5 24/9 26/6
27/1 27/2 29/9 31/12
32/4 36/16 38/12 39/13
39/23 41/14 41/18
**below [1]** 44/18
**belt [2]** 18/6 32/20
**belts [3]** 30/1 32/13
32/14
**better [4]** 4/17 4/18
4/21 4/22
**between [13]** 6/10 6/12
11/2 11/6 11/10 20/11
23/11 25/7 27/14 28/8
29/2 38/14 38/16
**bit [5]** 31/8 40/22 42/23
43/3 43/4
**both [5]** 8/20 10/7 22/10
37/8 38/4
**bothersome [1]** 43/4
**Box [1]** 2/4
**breach [1]** 6/13
**break [1]** 15/15
**breaking [1]** 4/12
**brief [13]** 5/15 11/13
11/14 13/4 13/9 13/21
14/23 16/1 17/20 20/21
26/23 27/13 35/9
**briefly [3]** 13/12 33/17
35/17
**brought [1]** 43/2
**bucket [1]** 24/15
**building [1]** 10/8
**burden [10]** 18/11
24/17 25/4 25/19 25/22
30/2 31/10 32/3 36/21
40/2
**burdens [2]** 38/1 38/4

**burdensome [3]** 15/6
38/3 40/21
**business [3]** 25/11
35/21 36/18
**businesses [1]** 25/13
**buy [1]** 32/18

**C**

**CA [1]** 1/4
**calculation [1]** 7/4
**called [4]** 13/22 14/2
28/18 34/11
**came [1]** 34/14
**can [5]** 6/3 21/18 30/2
35/4 42/17
**can't [4]** 8/15 30/15
30/19 36/12
**care [3]** 33/19 35/19
35/23
**Caremark [3]** 6/16
26/10 26/15
**carry [1]** 38/4
**case [40]** 5/16 6/9 7/2
8/12 9/6 10/12 11/5
11/14 11/16 13/4 13/9
13/15 14/22 15/3 15/4
16/2 16/3 16/3 16/23
18/20 18/23 20/3 20/10
20/11 21/4 23/17 24/21
25/5 25/14 28/23 29/16
32/4 33/4 35/2 35/8
37/17 41/17 41/17 43/3
44/8
**cases [15]** 16/20 17/12
17/23 28/20 29/8 30/8
30/10 31/23 34/22 35/6
36/14 36/20 37/7 41/20
42/8
**Castle [1]** 44/8
**category [1]** 15/10
**CCLD [1]** 1/4
**ceiling [1]** 33/21
**Centene [15]** 5/14 5/20
9/2 9/20 9/20 10/1 10/2
10/3 11/23 12/10 13/17
14/8 20/12 24/10 33/19
**Centene's [2]** 10/3
11/23
**center [1]** 16/6
**certain [6]** 12/22 17/9
17/12 34/12 37/23 38/4
**certainly [5]** 23/4 24/7
24/11 36/16 36/21
**CERTIFICATE [1]** 44/1
**certification [1]** 44/13
**certify [1]** 44/4
**challenged [1]** 37/23
**charge [2]** 7/15 16/6
**charges [1]** 5/18 5/21
**Circuit [1]** 11/4
**cited [2]** 11/16 35/7
**Civil [1]** 37/12
**claim [2]** 6/14 37/15
**claims [5]** 5/18 5/19
21/9 25/20 26/11
**clarification [2]** 41/13
42/18
**clear [4]** 7/3 8/5 8/13
36/10

**C**

clearly [5] 23/14 23/15 26/16 30/22 42/5
client [1] 15/15
client's [1] 22/2
collect [1] 24/18
collected [6] 31/11 31/14 31/15 31/17 32/5 32/7
collecting [1] 8/21
collection [1] 31/13
collectively [1] 5/14
combination [1] 25/18
coming [1] 4/14
commercial [3] 10/20 20/10 20/11
commit [1] 22/13
commitment [1] 18/17
committed [1] 18/23
communications [9] 7/13 9/21 10/4 12/1 12/21 13/1 13/6 15/11 26/15
companies [2] 34/5 34/8
compared [1] 21/15
compel [8] 1/13 3/4 4/8 5/11 7/9 11/18 19/7 26/21
compelling [1] 24/10
complaint [1] 11/9
completely [1] 24/15
comprise [1] 18/16
compromise [1] 19/1
concealment [3] 13/19 14/13 23/22
concept [1] 27/6
conceptual [2] 41/13 42/3
concerns [1] 30/3
confer [3] 41/6 42/4 42/17
connect [1] 20/22
Connecticut [1] 13/22
Connecticut's [1] 13/2
connection [1] 4/15
consider [1] 8/9
considerations [1] 30/5
considered [1] 44/13
consistent [2] 7/2 8/5
consumer [3] 28/22 29/3 33/4
context [2] 23/16 31/9
continued [1] 14/7
contract [14] 6/10 6/12 6/14 20/7 20/9 20/11 25/7 26/10 27/10 28/12 36/1 36/5 36/5 38/8
contractors [1] 10/21
contracts [17] 5/22 6/8 6/13 6/15 6/22 7/1 7/17 8/5 8/12 8/19 11/2 11/7 11/11 20/18 22/21 29/6 30/23
contractual [5] 8/2 8/14 8/22 26/5 39/19
copied [1] 44/16
core [1] 16/7

corners [4] 7/19 8/17 8/19 10/11
CORP [1] 1/7 2/21
correct [1] 6/6
correctly [2] 30/7 39/5
corroborate [1] 17/3
costs [2] 6/2 32/15
could [4] 17/8 17/10 21/1 32/17
counsel [10] 2/11 2/21 4/6 19/20 20/15 30/22 31/11 31/23 36/2 44/11
counsel's [1] 30/15
country [1] 33/20
County [1] 44/8
court [28] 1/1 1/21 4/7 5/9 7/18 8/1 8/16 8/18 10/10 14/14 15/16 19/5 19/7 19/18 37/12 37/22 38/2 38/12 38/21 39/12 40/4 40/10 43/5 44/1 44/3 44/3 44/7 44/23
CourtScribes [1] 4/3
covered [1] 42/2
creature [2] 20/5 20/7
critical [1] 24/8
CROSS [1] 3/2
crossed [1] 42/14
CROWELL [1] 2/7
CSR [4] 1/21 44/2 44/22 44/22
CUMMINGS [1] 2/5
current [5] 16/11 16/13 16/18 34/19 35/12
current/former [1] 35/12
custodian [1] 15/4
custodians [2] 24/22 29/17
customary [3] 5/17 7/15 16/6
cut [2] 16/22 17/2
cuts [2] 14/10 14/17

**D**

D.C [2] 2/8
DANIEL [1] 2/9
date [1] 25/2
Day [1] 44/19
deal [2] 22/9 42/19
dealt [1] 29/5
deem [1] 42/15
defaults [1] 9/3
Defendants [1] 2/21
DEFENDANTS' [2] 1/13 3/4
defense [1] 37/16
defenses [1] 25/21
deficiencies [1] 17/5
define [1] 7/17
definition [5] 6/4 6/5 6/20 7/1 27/18
definitions [2] 21/3 23/17 37/2
DELAWARE [8] 1/1 1/22 2/4 2/15 30/4 44/4 44/7 44/10
demonstrate [1] 38/2
denied [1] 40/9

deposition [3] 16/10 17/10 17/16
depositions [3] 17/9 17/13 30/9
DESANTO [8] 2/8 4/12 5/5 5/10 6/3 6/18 24/2 33/15
desk [1] 4/20
Despite [1] 14/4
determine [1] 7/20 21/11 22/3 40/18
determined [3] 22/9 26/4 38/17
determines [1] 7/18
determining [1] 39/16
developed [1] 30/12
dictated [1] 10/8
did [1] 30/18
didn't [2] 30/14 34/13
differ [1] 23/11
difference [2] 34/14 38/14
different [29] 12/5 22/7 23/1 23/14 23/15 23/15 23/16 24/15 27/7 27/8 28/14 28/23 29/5 29/5 29/6 29/12 31/1 31/1 31/2 31/3 31/4 33/2 33/3 33/6 35/21 36/6 36/14 37/14 37/19 40/15
DIRECT [1] 3/2
disagreement [1] 25/7
disassembled [1] 44/15
discount [2] 22/5 22/12
discovery [34] 7/7 7/8 7/11 7/12 8/8 9/10 9/11 9/23 10/15 10/16 11/22 12/3 12/5 12/10 12/12 14/15 15/17 15/18 15/22 16/9 16/10 17/20 19/3 19/7 24/2 24/4 24/8 24/21 29/16 30/9 37/10 37/14 37/19 40/15
discussion [1] 41/8
dismiss [1] 14/14
dispositive [1] 28/11
disproportional [1] 25/5
disproportionate [1] 15/1
distinct [1] 26/17
distinction [1] 28/9
distributed [1] 44/16
do [18] 12/11 12/15 13/1 13/5 21/11 21/20 22/6 25/8 29/3 32/1 33/5 34/20 38/14 38/21 38/23 39/23 41/13 44/4
doctrine [2] 13/18 14/13
document [3] 3/4 17/20 31/7
documents [21] 1/14 7/13 15/5 15/8 15/11 18/8 18/21 19/2 25/1 25/2 31/12 31/13 31/16 31/21 32/4 32/7 32/17 32/20 33/1 33/8 40/13
does [5] 10/19 18/13

doing [6] 5/1 9/9 10/13 14/6 24/3 28/1
don't [23] 4/13 4/15 12/19 12/20 12/21 15/3 15/4 21/23 22/5 22/12 23/12 23/19 26/19 26/20 28/1 29/3 30/14 36/7 36/12 39/7 39/20 40/6 42/6
done [2] 39/9 39/10
dovetails [1] 20/14
drug [2] 5/19 6/2

**E**

each [4] 4/11 14/4 23/13 42/7
efficiencies [1] 35/4
efficiency [1] 29/14
efficient [3] 18/10 29/16 29/20
either [1] 17/3
element [1] 14/12
eliminate [1] 17/12
ELLIOTT [1] 2/14
else [1] 36/9
employees [8] 16/12 16/14 16/19 17/17 17/17 34/19 35/13 40/17
engaged [4] 8/21 9/10 10/8 25/16
enough [3] 38/5 39/12 39/21
entities [3] 10/4 12/1 15/12
ENVOLVE [4] 1/4 4/9 6/11 6/12
Envolve's [1] 6/13
especially [1] 40/23
ESQUIRE [7] 2/5 2/8 2/9 2/9 2/10 2/15 2/19
essential [1] 41/18
essentially [4] 16/22 18/1 32/2 32/6
et [2] 1/4 1/7
even [6] 9/23 23/17 25/3 25/12 25/12 27/14
event [2] 7/18 10/10
every [2] 21/13 29/23
everybody [1] 36/3
everything [1] 12/18
evidence [20] 7/16 8/10 8/22 9/11 9/13 9/13 9/15 9/19 10/2 10/9 10/10 10/16 12/7 12/12 13/12 15/2 20/17 23/18 28/2 36/2
Evolve [1] 2/12
exactly [2] 21/19 36/13
example [1] 23/5
exceptions [1] 27/17
excess [1] 43/4
excluding [1] 5/23
exclusion [1] 9/4
excuse [1] 15/10
executives [1] 16/19
exhibit [2] 11/17 35/9
expense [2] 32/9 33/10
extend [1] 41/5

extent [6] 27/22 33/9 36/17 36/20 41/19 42/13
extraordinary [1] 32/19
extrinsic [6] 7/16 8/9 8/22 9/11 10/9 23/18

**F**

fact [2] 25/10 32/23
factor [1] 22/5
factors [2] 40/4 40/18
fall [1] 36/20
far [2] 4/20 28/13
FCA [1] 41/17
Federal [3] 11/8 11/12 22/11
fee [20] 10/19 19/23 20/1 20/4 21/1 23/1 24/14 25/9 25/11 25/16 26/13 26/17 27/11 27/22 28/10 28/17 34/1 34/3 35/20 41/20
fee-for-service [19] 10/19 19/23 20/1 20/4 21/1 23/1 24/14 25/9 25/11 25/16 26/17 27/11 27/22 28/10 28/17 34/1 34/3 35/20 41/20
FEP [3] 26/2 26/11 34/7
file [1] 41/9
filed [1] 4/9
Finally [1] 36/11
find [3] 39/6 40/20 40/22
finds [1] 40/5
fine [2] 15/20 19/12
first [6] 8/1 10/15 12/3 15/17 28/3 28/20
focus [4] 16/8 17/14 19/19 34/18
focused [2] 40/22 40/23
for-service-issue [1] 26/13
force [1] 32/9
forcing [1] 32/8
foregoing [1] 44/4
former [7] 16/11 16/13 16/18 17/17 34/19 35/12 40/16
forth [1] 39/15
four [4] 7/19 8/17 8/19 10/11
frankly [4] 23/21 24/1 27/2 32/16
fraud [1] 13/19
fraudulent [2] 14/13 23/22
friend [1] 25/23
friend's [2] 12/16 21/6
full [2] 41/16 42/6
fully [1] 38/9
functions [4] 10/18 20/1 33/21 33/22
further [3] 14/1 19/5 33/11

**G**

gain [1] 17/7
Garbe [8] 11/5 11/14 13/4 13/9 13/20 27/4

## G

Garbe... [2]  27/5 27/14
gather [1]  17/2
gave [2]  16/19 17/17
general [2]  7/8 37/18
get [2]  18/5 29/23
gets [1]  7/23
getting [2]  12/9 18/7
give [2]  4/13 39/15
given [1]  38/11
go [10]  5/5 7/19 8/2
8/17 10/11 17/9 18/20
21/10 24/18 40/2
goes [2]  19/21 22/10
going [10]  5/10 8/1 8/11
8/16 8/18 8/18 14/21
22/15 38/21 42/15
gone [1]  19/11
good [2]  4/6 5/7
govern [1]  20/23
governed [4]  29/11
35/22 35/23 38/7
government [2]  10/4
39/2
granting [1]  40/10
greatly [1]  42/23
guidance [2]  20/6 21/2
guide [2]  21/19 22/2
guides [1]  22/4

## H

Hac [2]  2/10 2/20
had [8]  6/4 12/22 13/5
14/18 14/21 18/8 31/19
44/5
hand [2]  39/23 44/19
happy [2]  15/18 42/4
HARDY [2]  2/18 5/3
HARRISON [1]  2/9
has [37]  4/7 4/8 8/7 9/1
9/2 9/5 9/5 9/9 9/10 9/12
9/14 9/23 10/13 12/22
13/5 13/14 13/16 13/17
15/16 18/8 18/22 19/5
24/8 24/20 28/13 28/16
31/23 32/19 34/2 34/5
38/9 38/12 39/11 39/18
39/20 40/1 41/8
has sought [1]  9/12
have [40]  4/15 8/2 12/7
19/9 19/11 23/14 24/11
24/12 24/18 24/18 24/23
25/10 26/19 29/3 29/6
29/14 29/17 30/23 31/11
31/14 31/16 31/17 32/2
32/10 32/17 33/5 33/11
33/12 36/23 37/3 37/8
37/9 38/1 38/5 40/6 42/6
42/11 42/14 42/22 43/1
haven't [2]  21/15 29/19
having [1]  14/4
HDQTRS [2]  1/7 2/21
hear [4]  4/8 19/14 20/19
30/14
heard [3]  22/1 37/8 38/5
heart [3]  16/23 19/21
30/19
here [1]  7/12 8/3 10/6

18/8 16/17 17/5 17/14
18/4 20/2 20/8 21/21
22/14 25/21 26/5 26/21
27/1 28/11 29/1 31/5
31/16 32/7 32/17 33/6
35/4 36/4 38/15 38/20
39/15 39/17 40/6 41/21
hereby [1]  44/4
herein [1]  44/8
herring [1]  15/9
hide [1]  14/7
highlight [1]  11/21
highly [1]  16/17
HIPAA [1]  33/5
his [1]  19/20
historical [1]  26/9
histories [1]  31/2
history [3]  23/12 23/15
28/14
Honor [32]  5/8 5/16 6/7
10/7 13/13 19/16 21/13
22/17 22/22 24/5 24/13
26/6 27/13 27/19 28/15
28/16 28/22 30/13 31/8
32/16 32/23 33/8 33/11
33/16 34/17 35/16 36/5
36/12 37/4 41/12 43/9
43/11
HONORABLE [1]  1/9
house [1]  32/18
how [16]  10/16 12/13
12/15 16/21 20/22 21/7
21/11 22/3 22/9 24/6
28/10 29/19 30/12 33/21
35/3 38/17
However [2]  8/7 18/13
Humana [5]  16/3 28/21
29/4 37/4 40/12
hundreds [1]  24/23

## I

identified [2]  29/18
41/2
identifies [1]  16/1
ignoring [1]  30/2
impeach [1]  17/4
important [4]  10/1
20/13 31/9 41/14
imposed [1]  32/21
imposes [2]  24/17
25/21
improper [1]  14/6
INC [2]  1/4 2/12
include [2]  7/4 11/17
included [1]  14/9
includes [1]  31/13
including [1]  9/16
incredible [1]  25/4
indicated [2]  8/7 9/5
individualized [1]  21/15
industry [16]  9/3 9/7
9/12 9/14 9/19 10/2 10/9
10/17 11/15 11/19 12/6
12/10 12/13 14/18 24/6
34/4
information [6]  13/21
14/1 17/3 33/5 37/18
37/20
inquiries [3]  27/22 28/4

28/4
instance [2]  26/7 28/5
insurance [2]  34/5 34/8
insurer [1]  29/2
insurers [2]  22/11
22/11 22/11
interact [1]  21/7
interaction [1]  22/2
interested [1]  44/12
interpreting [1]  20/18
interpretive [3]  21/2
36/8 39/17
interrogatory [2]  16/14
17/16
invoke [1]  34/20
involve [4]  33/4 36/14
36/15 36/18
involved [2]  38/16
41/16
involves [1]  28/23
involving [1]  15/14
irrelevant [2]  24/16
is [168]
issue [37]  6/9 7/2 7/8
7/9 7/17 7/20 13/14
13/15 14/17 15/7 16/7
17/23 19/8 19/22 21/4
21/16 21/21 23/17 23/20
24/9 24/13 25/3 26/9
26/9 26/13 26/14 26/21
26/22 27/7 27/20 28/8
28/11 28/17 28/18 29/22
31/10 42/3
issued [2]  10/15 34/21
issues [11]  16/22 17/11
20/8 28/23 29/1 29/5
29/7 29/9 30/19 36/22
41/20
it [91]
It's [1]  35/20
its [33]  5/17 5/21 5/23
6/1 7/4 7/5 7/14 8/8 8/13
9/20 10/15 11/13 11/13
12/10 14/3 14/7 14/9
14/12 14/14 14/19 14/23
16/5 16/21 18/2 18/2
18/14 23/6 27/15 34/6
34/10 34/14 35/1 35/9
itself [3]  34/13 35/7
37/11

## J

JASON [1]  2/15
JEROME [2]  2/8 5/10
JONES [1]  2/14
just [9]  4/14 11/21
18/11 30/7 33/18 35/17
38/23 39/20 42/10

## K

KEITH [1]  2/9
kin [1]  44/11
King [2]  1/22 2/14
knew [1]  14/11
know [16]  4/15 12/19
12/20 12/21 13/1 13/5
23/10 23/11 23/12 23/19
26/19 30/17 33/10 36/12
38/5 41/7

28/4
knowledge [1]  24/6
known [2]  24/6 24/12
knows [1]  31/11

## L

L.L.P [3]  2/3 2/7 2/18
language [2]  8/2 26/5
38/8 39/14 39/20
large [1]  31/12
largest [1]  33/19
last [1]  34/16
lean [1]  42/21
least [4]  9/15 13/2
33/20 36/19
legislatures [1]  23/8
length [1]  17/8
let [1]  40/7
level [2]  20/7 23/8
lie [1]  38/6
likely [1]  36/17
limit [1]  40/23
limitation [1]  30/14
limitations [5]  13/14
13/17 14/17 14/20 23/23
limited [2]  40/11 40/13
line [1]  35/21
LISA [4]  1/21 44/2
44/22 44/22
litigation [6]  6/21 28/19
31/20 35/15 43/2 43/7
litigation's [4]  15/22
16/9 17/20 19/2
litigations [13]  9/2 16/2
16/3 18/15 29/10 29/12
30/18 31/15 31/22 32/5
41/1 42/11 42/14
little [2]  4/20 31/8
look [2]  18/4 22/16
looked [1]  36/23
looking [1]  30/7
lot [2]  24/1 24/4

## M

made [4]  11/14 18/5
20/15 41/3
make [6]  18/7 27/13
29/15 30/15 35/14 40/7
makes [1]  21/4
managed [3]  33/19
35/19 35/23
manner [1]  44/17
many [1]  10/22
marked [1]  41/10
market [6]  2/3 2/18
22/10 23/2 23/5 23/6
marketplace [1]  21/11
materially [1]  12/4
materials [1]  40/15
matter [5]  21/8 26/3
37/14 37/21 38/7
matters [6]  17/18 17/22
34/20 35/2 36/4 40/12
may [19]  5/9 8/9 9/6
15/8 19/17 21/10 33/4
35/16 37/13 37/21 38/17
41/4 41/5 41/12 41/18
42/13 42/14 43/1 43/5
May 2nd [1]  41/4
maybe [4]  4/19 22/4

22/5 22/6
he [5]  4/10 7/23 39/21
40/7 44/6
mean [3]  7/17 23/5
32/18
meaning [4]  8/14 8/23
9/3 39/17
meaningful [1]  33/10
means [1]  7/21
Medicaid [47]
Medicaid's [1]  28/10
Medicare [1]  10/10
meet [3]  41/6 42/4
42/17
mention [5]  20/20
28/20 29/13 32/23 34/17
mentioned [1]  13/8
24/2
mentions [1]  14/23
methods [1]  40/17
MICHAEL [1]  2/10
might [1]  15/1
million [2]  15/4 43/3
minutes [1]  37/9
mischaracterize [1]
27/3
misreported [1]  5/21
misreporting [2]  5/17
16/5
missed [2]  25/10 26/19
mistakes [1]  18/5
MONDAY [2]  1/13 4/1
money [1]  32/12
more [8]  25/23 26/4
28/16 29/16 29/20 35/14
40/22 42/5
MORING [1]  2/7
morning [3]  4/6 5/7
41/11
MORRIS [1]  2/3
motion [20]  1/13 3/4
4/8 5/6 5/11 5/14 7/9
11/17 14/14 19/8 20/21
23/21 26/21 30/5 35/4
35/10 37/10 37/11 40/8
40/11
move [2]  15/18 15/20
Moving [1]  13/11
Mr [6]  4/12 5/5 6/3 6/18
24/2 33/15
Mr. [1]  42/9
Mr. Sullivan [1]  42/9
much [2]  4/22 18/10
my [7]  4/20 5/9 8/1 29/7
41/6 41/15 44/19

## N

N16C [1]  1/4
N16C-12-214 [1]  1/4
name [1]  5/9
narrow [1]  17/10
narrowed [2]  42/11
42/22
nature [1]  15/13
near [1]  10/23
necessary [1]  42/5
need [15]  7/19 8/8 8/9
8/17 17/2 17/9 17/12
20/16 21/19 23/18 29/12

**N**

need... [4]  33/8 34/23
36/8 42/1
needed [1]  39/22
needs [5]  10/11 15/2
25/5 37/16 42/18
negotiation [1]  28/13
negotiations [2]  23/14
31/3
neither [4]  38/8 38/10
39/18 44/11
New [1]  44/7
next [2]  13/3 29/22
nice [1]  32/18
NICHOLS [1]  2/3
no [8]  1/4 9/7 20/12
20/20 21/8 21/22 22/14
23/4
non [1]  37/14
non-privileged [1]
37/14
North [1]  2/3
not [49]
not seen [1]  37/3
note [2]  38/14 39/18
noted [5]  4/5 14/14
27/14 27/15 43/12
noteworthy [1]  27/12
nothing [1]  12/4 25/20
notice [6]  14/4 14/18
23/21 27/20 27/23 28/2
now [4]  23/19 36/6
41/22 42/16
null [1]  44/14
number [5]  31/12 34/2
39/4 39/4 39/5
numbers [1]  40/6
numerous [3]  6/8 6/15
24/22
NW [1]  2/7

**O**

obtain [1]  37/13
obvious [1]  17/5
obviously [1]  29/10
Office [1]  44/9
OFFICIAL [3]  1/21 44/2
44/23
Okay [4]  13/10 19/13
31/6 43/7
one [18]  6/20 10/1 13/8
19/19 20/22 21/2 21/13
22/23 23/13 25/12 25/17
27/9 27/10 27/19 33/18
39/6 41/13 42/8
only [3]  24/16 30/10
35/13
operated [1]  16/21
opinion [2]  14/14 27/15
opposed [1]  35/3
opposition [1]  35/9
order [5]  33/6 34/21
37/6 41/9 41/10
ordering [1]  40/15
orders [2]  29/6 29/11
33/2
Oregon [2]  13/6 14/2
other [23]  9/2 9/16 9/21

15/22 16/3 16/9 17/18
17/19 17/22 18/15 19/2
19/15 28/18 31/15 31/21
32/5 34/20 34/21 35/2
35/6 38/19 39/23 42/23
our [16]  7/6 7/22 8/4
11/9 11/17 13/1 15/19
16/1 16/8 17/14 18/4
24/11 25/21 27/13 33/12
34/18
out [7]  4/14 13/23 14/2
27/6 33/18 34/11 42/12
outcome [1]  44/12
outside [6]  7/19 8/2
8/17 8/19 10/11 12/8
over [4]  17/9 19/12 25/1
38/3
overall [2]  22/12 43/6
overbreadth [1]  12/16
overlap [2]  42/23 43/3
overly [2]  15/5 40/21
own [9]  8/8 9/20 10/3
10/8 11/23 12/10 23/6
28/6 28/7

**P**

P.A [1]  2/14
P.O [1]  2/4
Page [1]  3/4
paper [1]  29/23
part [5]  10/20 17/19
22/13 30/3 30/4
participant [1]  44/11
particular [5]  6/5 21/16
28/5 30/20 42/11
particularities [2]  41/22
42/7
parties [18]  8/20 9/16
10/7 12/7 15/14 24/3
24/4 25/8 25/13 25/17
28/8 31/2 37/13 38/4
38/12 38/18 38/19 41/5
Parties' [2]  5/23 18/18
party [8]  6/16 26/16
32/22 32/22 38/9 39/18
44/11 44/17
party's [1]  37/15
PAUL [1]  1/9
payer [1]  33/20
payers [3]  10/20 34/7
34/9
payment [1]  38/15
PBMs [3]  6/16 9/16
11/3
Pennsylvania [2]  2/7
2/19
perhaps [1]  17/11
period [1]  41/5
permission [1]  35/1
permitting [1]  35/5
pharmacies [3]  9/16
9/22 11/2
pharmacy [3]  1/4 2/12
29/2
Philadelphia [1]  2/19
phrase [1]  23/3
PINE [1]  2/10
Plaintiff [2]  2/11 25/17
plaintiffs [3]  5/12 5/13

38/1
PLAINTIFFS [3]  1/13
3/4 25/13
play [2]  22/5 29/1
please [2]  5/9 19/17
point [14]  8/16 8/20
10/6 20/15 27/5 27/6
27/13 27/19 33/13 33/18
38/23 39/22 41/13 42/10
political [1]  23/7
portions [1]  30/11
POs [1]  36/20
position [12]  7/6 7/22
8/4 8/11 8/13 9/2 9/5
18/4 21/17 27/1 27/3
33/13
possibility [1]  37/20
possible [1]  36/16
possibly [2]  14/6 30/2
potential [2]  29/18
42/12
potentially [2]  20/17
41/14
pots [1]  10/9
practices [5]  13/23 14/9
34/6 34/11 34/15
precisely [2]  24/5 30/17
predict [1]  8/15
prescription [2]  5/19
6/2
present [4]  4/4 5/3 5/6
40/16
presented [1]  39/12
presenting [2]  4/10
5/10
press [1]  8/18
pretty [1]  18/10
pricing [16]  6/1 7/5 9/4
9/18 9/22 10/5 12/2
16/20 18/12 18/9 18/9
PRICKETT [1]  2/14
private [8]  11/2 11/7
11/11 22/10 26/12 27/9
28/13 34/8
privilege [2]  15/15
15/18
privileged [1]  15/8
15/13 37/14
Pro [2]  2/10 2/20
problem [1]  12/16
proceedings [1]  44/5
process [1]  8/21
processing [1]  26/11
produce [3]  18/14
24/19 35/1
produced [6]  17/21
24/22 25/1 31/19 31/19
42/12
producing [3]  15/2
18/21 32/22
production [14]  1/14
3/4 17/21 18/12 18/15
18/18 18/19 19/17 31/8
35/5 35/11 40/11 41/3
41/7
productions [1]  32/1
program [7]  6/1 7/5
9/18 16/21 18/2 18/9
26/2

programs [5]  22/5
22/12 24/7 26/4 43/1
proportional [1]  37/16
proportionality [2]
25/19 30/3
protected [1]  37/6
protective [2]  26/9
29/11 33/2 33/6 34/21
37/6
Prothonotary [1]  44/10
provide [1]  37/13
PRW [1]  1/4
pull [1]  15/5
purposes [5]  6/21
20/17 32/3 35/14 36/8
pursuant [2]  39/10 42/1
put [2]  13/14 27/23

**Q**

question [5]  6/19 8/1
14/10 23/4 41/18
questions [5]  15/16
19/6 28/16 33/12
quick [1]  27/19
quite [2]  8/10 40/6
quote [1]  14/11

**R**

Rahimi [5]  16/2 28/21
29/4 40/12 41/17
raise [1]  42/4
raised [2]  26/22 42/7
raises [1]  15/7
re [2]  32/3 33/9
re-reviewed [1]  18/11
re-reviewing [1]  32/3
ready [1]  37/10
really [16]  10/6 17/14
19/21 20/19 24/14 25/6
25/19 26/15 28/22 28/5
28/11 31/9 34/13 36/7
36/10 40/21
reason [1]  24/8
rebuttal [1]  19/10
recall [1]  30/7
recognize [1]  34/14
recognized [1]  11/5
record [1]  44/9
RECROSS [1]  3/2
red [1]  15/9
REDIRECT [1]  3/2
refer [2]  7/10 15/23
reference [1]  26/8
referenced [1]  13/3
referred [1]  26/23
referring [5]  5/13 26/8
regard [1]  19/22
regarding [2]  37/14
41/7
regulation [1]  20/6
20/13
regulations [12]  10/23
11/7 11/8 11/12 11/19
21/14 21/18 22/6 27/15
27/16 28/7 39/11
regulators [1]  23/9
regulatory [1]  39/13
reimbursement [2]
5/20 33/22

relate [5]  28/5 30/5
30/11 30/18 33/2
related [1]  26/9
relating [2]  7/13 12/1
relations [1]  11/11
relationship [1]  5/23
relationships [2]  31/1
36/19
relevance [4]  25/18
36/22 39/1 39/8
relevant [20]  7/16 10/16
12/1 12/6 12/12 13/13
14/16 14/20 16/17 17/1
18/8 25/3 35/13 37/15
37/19 37/21 38/2 41/23
42/15 43/5
remaining [1]  19/9
remains [2]  18/14 44/9
remember [1]  39/5
report [1]  18/2
reported [1]  44/6
REPORTERS [1]  1/21
reporting [9]  7/14 13/7
13/23 14/3 14/7 14/9
34/6 34/10 34/15
represent [1]  36/2
representation [1]
30/16
reproduce [1]  18/11
request [8]  10/16 12/4
15/17 15/19 15/21 16/9
19/6 19/23
requested [1]  29/17
requests [7]  7/7 7/8
11/22 19/8 28/19 31/22
39/2
require [1]  7/3
required [1]  18/2
requirements [2]  10/22
11/1
reserve [1]  19/9
resolving [3]  10/12
25/6 25/20
respect [12]  7/6 8/12
8/14 11/20 14/6 17/6
17/15 19/1 34/5 34/10
34/17 35/9
respectfully [1]  19/6
respective [2]  9/17 10/8
respond [1]  35/17
response [2]  13/17
36/7
responses [2]  16/14
17/16
responsive [1]  31/22
responsiveness [2]
18/20 31/18
rest [1]  14/8
review [1]  18/19
reviewed [5]  24/23
31/17 32/10 33/9 42/19
reviewing [5]  32/3 32/9
32/17 32/20 32/22
RIGBY [1]  2/15
right [7]  14/10 22/14
23/19 30/12 40/6 41/21
43/10
RITE [64]
role [1]  26/10

**R**

RPR [4] 1/21 44/2 44/22 44/22
RSP [2] 5/23 9/4
rule [2] 37/10 37/12 37/18
rules [1] 30/4
ruling [1] 42/2

**S**

said [4] 19/20 19/23 20/16 44/12
same [18] 10/18 12/11 18/1 20/2 29/17 29/18 31/4 31/13 32/6 33/23 34/4 34/7 34/9 34/10 36/3 37/2 42/2 44/9
say [3] 22/18 22/23 26/3
saying [2] 21/22 25/15
says [4] 21/9 22/4 22/8 36/2
scope [2] 42/12 42/22
scrap [1] 29/23
search [2] 18/19 40/14
second [5] 15/19 15/21 16/8 17/19 36/2
secondly [1] 28/3
see [4] 37/1 38/23 39/7 39/20
seek [1] 34/23
seeking [4] 7/12 9/20 10/3 11/23
seem [1] 4/12
seen [1] 37/3
seminal [1] 11/5
sense [1] 33/12
sensitive [2] 32/15 33/5
service [20] 10/19 19/23 20/1 20/4 21/1 23/1 24/14 25/9 25/11 25/16 26/13 26/17 27/11 27/22 28/10 28/17 34/1 34/3 35/20 41/20
set [3] 4/7 23/7 39/15
sets [5] 17/21 18/12 18/15 18/18 18/20
settle [1] 38/10
seven [1] 9/15
Seventh [1] 11/4
shall [2] 41/3 44/13
shared [1] 44/16
SHOOK [2] 2/18 5/3
short [1] 12/3
should [5] 12/6 12/11 18/10 24/12 38/12
show [1] 36/3
showing [1] 39/1
shown [1] 40/1
shows [3] 11/9 24/10 35/4
side [2] 4/11 19/15
signatory [1] 44/18
significant [4] 24/17 24/20 25/22 39/1
similar [5] 11/1 16/4 26/4 26/5 39/14
similarities [2] 11/6 11/10

similarly [1] 33/22
simply [2] 27/5 39/12
sitting [2] 4/19 41/21
Six [1] 40/8
Sixth [1] 44/19
so [24] 6/7 7/6 10/6 10/14 12/3 12/19 14/23 15/3 15/16 15/21 16/1 17/14 19/5 21/4 24/13 25/18 28/9 28/18 32/8 34/13 35/11 36/21 39/3 42/22
so-called [1] 28/18
SOLUTIONS [2] 1/4 2/12
some [12] 15/8 17/11 21/10 27/23 33/9 35/4 36/19 38/12 41/8 41/10 42/18 43/5
somebody [1] 21/9
someone [1] 22/8
something [3] 4/16 18/22 36/9
sometimes [1] 18/5 27/17
sophistication [1] 38/11
Sorry [1] 4/23
sought [5] 9/12 9/14 9/23 37/19 37/20
spaces [1] 27/7
specific [2] 12/14 29/9
specifically [4] 9/12 22/4 38/8 40/17
specifics [1] 30/9
spent [2] 32/17 32/20
squarely [1] 26/20
Stafford [4] 16/2 28/21 28/22 40/12
standard [10] 9/7 9/13 9/15 9/19 10/2 10/10 11/19 12/7 12/10 32/21
state [47]
state's [2] 20/23 28/5
stated [1] 44/8
statements [1] 16/13
statues [1] 21/18
statute [14] 13/13 13/16 14/16 14/20 20/5 20/12 21/9 22/15 22/16 22/20 23/23 28/6 35/22 36/6
statutes [5] 20/23 21/14 22/1 27/17 39/11
statutory [1] 39/13
STENOGRAPHER [3] 44/1 44/3 44/23
stenographically [1] 44/6
stipulation [1] 41/6
straight [1] 22/15
streamlined [1] 35/14
Street [4] 1/22 2/3 2/14 2/18
strong [1] 38/13
subject [2] 33/1 37/21
submissions [4] 5/18 6/1 18/3 18/5
submitted [1] 5/19
substantial [1] 11/6

11/10 40/2
substantially [3] 11/1 16/4 33/23
such [3] 38/18 38/19 39/15
sufficient [1] 15/14
suggest [1] 27/21
suggestion [1] 21/7
suggests [1] 36/7
Suite [2] 1/22 2/18
SULLIVAN [2] 2/19 5/2 19/17 42/9
SUPERIOR [5] 1/1 1/21 37/12 44/3 44/6
supports [1] 27/1
sure [5] 8/10 18/7 23/13 35/18 40/7
surprised [1] 20/19
suspenders [5] 18/6 30/1 32/13 32/14 32/21
sworn [1] 16/13
systems [1] 38/15

**T**

take [1] 8/11 9/6 12/6 12/9 18/17 32/1
taken [4] 9/2 30/10 37/9 43/7
taking [2] 9/11 12/8
talked [4] 23/21 23/22 24/2 25/23
talking [5] 30/8 30/8 38/18 38/19 42/10
tee [1] 42/5
teed [1] 23/20
tell [4] 4/10 30/19 39/21 42/21
term [2] 7/18 23/3
terms [7] 8/6 18/19 23/7 28/9 31/7 33/21 40/14
testified [1] 29/8
testimony [6] 16/12 16/20 17/4 30/20 35/1 36/17
than [3] 23/16 28/23 36/6
Thank [4] 33/14 33/16 43/8 43/11
that [202]
their [13] 8/6 9/17 10/8 11/19 15/12 20/20 20/21 20/21 21/17 26/21 27/1 28/6 28/6
them [5] 12/15 17/7 21/16 23/12 32/3
theme [1] 43/6
then [3] 13/11 29/4 42/20
there [42] 6/8 6/10 6/11 6/15 6/20 7/7 9/7 10/22 11/4 12/4 17/5 20/12 20/19 21/10 22/3 22/14 23/4 23/4 23/10 23/18 24/3 24/5 24/20 26/8 27/23 30/20 30/21 37/19 37/23 38/9 39/7 39/8 39/11 39/19 39/20 40/1 41/8 41/19 42/12 42/18 43/4 43/7

therefore [2] 14/16 24/17
thereof [1] 44/13
these [23] 6/5 6/22 15/5 15/8 16/16 16/20 16/23 17/17 17/22 18/11 18/15 20/23 21/8 24/6 24/7 25/17 28/8 30/6 30/17 34/20 35/5 35/12 41/1
they [42] 7/3 7/3 7/17 8/12 11/18 14/18 16/6 17/1 19/23 20/16 20/16 21/15 21/19 22/6 23/11 23/21 23/22 24/1 25/15 25/16 26/3 26/7 26/23 26/23 27/2 27/21 28/20 29/10 29/13 29/14 29/14 29/17 29/21 29/22 30/2 32/12 33/1 33/2 36/7 36/8 37/1 42/15
thing [3] 19/19 22/23 34/16
things [4] 29/19 30/21 32/10 39/6
think [25] 6/23 10/6 10/14 13/12 14/10 14/16 14/17 15/3 15/4 15/9 16/16 18/10 20/14 25/1 26/7 26/20 26/22 28/1 28/9 29/14 30/22 31/8 33/12 35/11 38/5
third [8] 6/16 7/10 9/15 15/14 24/3 24/4 26/16 38/17
third-party [1] 6/16
this [77]
THOMAS [1] 2/19
those [50]
though [2] 6/4 21/8
thousands [1] 24/23
three [5] 16/1 28/20 30/8 41/1 42/11
threshold [1] 39/7
through [3] 8/8 30/1 40/2
time [6] 4/7 8/20 19/9 19/12 41/10 43/12
today [1] 10/7
today's [1] 5/11
tolling [1] 13/18
Tom [2] 5/2 19/16
too [2] 4/20 27/12
took [1] 27/3
top [1] 36/22
topics [1] 17/10
towards [1] 42/22
trade [1] 9/13
transcript [4] 35/7 44/5 44/14 44/15
transcripts [15] 16/10 16/11 16/12 16/16 17/1 17/6 17/15 29/15 30/17 34/18 35/6 35/12 36/11 36/13 40/16
treated [6] 34/2 34/5 34/7 34/8 34/9 36/3
truly [1] 39/18
truncate [1] 17/8
try [1] 4/13

trying [4] 29/21 29/23 36/9 40/2
TUNNELL [1] 2/3
Twenty [1] 44/19
Twenty-Sixth [1] 44/19
two [10] 7/7 15/5 19/7 27/7 27/7 30/6 34/2 38/11 39/6 40/4
types [1] 38/15
typically [1] 37/5

**U**

unambiguous [1] 38/10
uncertified [1] 44/15
under [4] 5/22 36/20 37/6 39/2
underlie [1] 6/13
understand [4] 16/18 26/14 32/11 33/7
understanding [6] 9/8 11/15 28/6 29/7 41/15 41/16
understandings [1] 9/17
understands [2] 10/17 12/13
unified [1] 6/20
uniform [1] 9/8
universe [1] 32/6
unless [5] 15/16 19/5 25/10 26/19 28/16 33/11 34/11
until [1] 34/11
unwilling [1] 18/14
up [7] 4/13 10/8 20/22 23/20 41/10 42/5 43/2
upon [5] 13/21 14/1 16/6 18/19 40/14
us [6] 17/2 27/23 32/1 32/8 32/9 32/18
usage [1] 9/13
use [3] 22/12 26/4 36/9
used [6] 21/1 21/18 23/4 35/5 37/2 40/18
using [2] 40/4 40/13
usual [3] 5/17 7/14 16/5

**V**

variation [1] 27/14
variations [1] 23/10
various [1] 5/22
very [5] 15/12 16/22 32/18 33/17 40/21
via [1] 4/3
Vice [2] 2/10 2/20
view [2] 24/11 25/21
violated [1] 8/6
visibility [1] 42/6
void [1] 44/14

**W**

WALLACE [1] 1/9
want [4] 18/7 18/13 19/19 34/16
wanted [1] 33/18
was [19] 13/3 14/5 14/6 18/1 20/18 23/20 23/20 26/4 26/5 26/8 26/22 26/22 27/5 28/1 30/18

**W**

**was... [4]** 30/20 34/11 41/16 42/7
**Washington [1]** 2/8
**way [13]** 5/15 10/18 18/21 20/2 20/22 29/19 33/23 34/4 34/7 34/9 34/10 36/4 43/5
**we [61]**
**well [7]** 19/4 20/18 28/16 33/8 36/4 36/23 42/9
**were [7]** 17/7 24/3 24/22 28/1 30/10 31/14 41/2
**what [27]** 4/15 7/10 7/12 7/16 7/20 8/10 8/13 9/9 12/19 12/21 14/5 21/6 21/8 21/19 21/23 26/2 26/7 28/1 30/16 30/19 31/23 36/4 36/10 36/13 38/21 39/16 42/7
**whatever [1]** 19/9
**whatnot [1]** 31/18
**when [5]** 7/17 32/4 34/14 37/23 40/23
**where [2]** 26/2 38/5
**whereas [1]** 40/22
**whether [4]** 8/16 14/11 14/18 37/1
**which [8]** 6/17 25/6 26/3 26/16 29/1 38/9 38/11 41/9
**who [3]** 4/10 5/1 25/13
**whole [1]** 23/1
**wholesale [1]** 15/11
**why [2]** 4/13 33/7
**wide [1]** 24/6
**will [15]** 5/3 5/13 7/10 15/22 19/8 19/14 28/15 39/21 40/1 40/13 41/9 42/19 42/21 42/21 44/14
**willing [4]** 18/16 19/3 22/13 38/9
**Wilmington [4]** 1/22 2/4 2/15 44/10
**withhold [1]** 15/10
**within [2]** 23/6 40/14
**without [1]** 44/17
**witness [3]** 16/12 17/4 44/19
**witnesses [1]** 29/18
**WOLFF [1]** 2/9
**wording [3]** 22/16 22/19 22/20
**work [1]** 39/9
**worked [1]** 24/7
**works [1]** 28/10
**would [36]** 4/10 15/5 15/13 15/13 16/17 17/2 18/16 19/3 21/19 22/17 22/22 24/11 24/17 24/18 25/2 25/3 27/23 28/2 29/8 29/15 29/20 30/11 30/22 31/14 32/2 32/9 33/8 34/23 35/14 36/3 36/19 39/4 39/15 41/22 41/23 42/1

**wrong [1]** 28/1
**wrongfulness [2]** 14/12 14/19

**Y**

**yes [1]** 6/7
**yet [2]** 18/23 29/16
**you [25]** 4/10 4/12 4/13 4/14 4/15 6/19 12/15 12/16 21/7 21/11 22/3 22/12 22/13 30/19 33/10 33/11 33/12 33/14 33/16 36/23 37/9 42/17 42/21 43/8 43/11
**your [38]** 5/6 5/7 5/15 6/7 10/7 12/15 13/13 19/12 19/16 21/6 21/13 22/2 22/17 22/22 24/4 24/13 25/23 26/6 27/13 27/19 28/15 28/16 28/22 30/13 31/8 32/16 32/23 33/8 33/11 33/16 34/17 35/16 36/4 36/11 37/4 41/12 43/8 43/11

**Z**

**Zoom [1]** 4/3

EFiled: Apr 12 2022 11:37AM EDT
Transaction ID 67421825
Case No. N19C-12-214 PRW CCLD



IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

ENVOLVE PHARMACY SOLUTIONS,  )
INC., et al.,                )
                             )
                 Plaintiffs, )
                             )   C.A. No. N19C-12-214 PRW
         v.                  )   [CCLD]
                             )
RITE AID HDQTRS. CORP., et al., )
                             )
                 Defendants. )

[~~PROPOSED~~] ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL
DEFENDANTS' PRODUCTION OF DOCUMENTS

The Court, having reviewed Plaintiffs' Motion to Compel Defendants'

Production of Documents, and for good cause shown,

IT IS HEREBY ORDERED this *11th* day of *April*, 2022, that:

1.  The Motion is GRANTED.

2.  *On or before May 2, 2022* ~~Within ten business days of entry of this Order~~, Defendants shall

produce documents responsive to Requests ~~17, 18,~~ 26, ~~and 29~~ of Plaintiffs' First

Requests for Document Production to Defendants. *The parties may extend this period by stipulation after a meet-and-confer regarding this production.*

The Honorable Paul R. Wallace

*✱ As to No. 26 production ~~will be~~ limited to Rahimi, Stafford, and Humana and will be limited to use of search terms within the discovery materials and the transcripts of former and present Rite Aid employers and specifically as to methods and factors used by Rite Aid to determine UaC.*